**AMFAC RESORTS, L.L.C., Plaintiff,**

v.

**UNITED STATES DEPARTMENT OF THE INTERIOR, et al., Defendants.**

**National Park Hospitality Assn., Plaintiff,**

v.

**United States Department of the Interior, et al., Defendants.**

**Hamilton Stores, Inc., Plaintiff,**

v.

**United States Department of the Interior, et al., Defendants.**

**Aramark Sports and Entertainment Services, Inc., Plaintiff,**

v.

**United States Department of the Interior, et al., Defendants.**

Civ. A. No. 00–2838 (RCL), Civ. A. No. 00–2885 (RCL), Civ. A. No. 00–2937 (RCL), Civ. A. No. 00–3085 (RCL).

United States District Court, District of Columbia.

April 24, 2001.

Mark Lynch, Covington & Burling, Washington DC, Kenneth Geller, Mayer, Brown & Platt, Washington DC, Rob Gassaway, Kirkland & Ellis, Washington DC, Edward Shapiro, Latham & Watkins, Washington DC, for Plaintiffs.

Marina Utgoff Braswell, U.S. Attorney's Office, Washington, DC, for Defendants.

### MEMORANDUM AND ORDER

LAMBERTH, District Judge.

Now before the Court are several issues related to the parties' access to and use of information. The plaintiffs seek discovery of materials outside the administrative record, and seek to share with their experts certain proprietary information that is already in the record. The defendants oppose the plaintiffs' motions for discovery, and demand a protective order limiting the circumstances under which the plaintiffs' experts may view portions of the administrative record. After a full consideration of the parties' memoranda, the applicable law, and for the following reasons, the Court DENIES the plaintiffs' discovery motions, and GRANTS in part and DENIES in part the defendants' motion for a protective order.

### I. BACKGROUND

The plaintiffs in these cases have been concessioners at various national parks throughout the United States for over 30 years. Although their concession contracts expire at the close of this year, they are interested in continuing as concessioners. To this end, they have been participating in the National Park Service ("NPS") bidding process. It is this pro-

cess to which the plaintiffs object, and seek to reform by the instant suit.

The plaintiffs' suits allege that the NPS's contracting process violates the Administrative Procedure Act ("APA") and the Tucker Act in that it

(1) denies the plaintiffs a preferred status in the contract renewal process;

(2) undervalues the plaintiffs' capital investment in their concession stores; and

(3) permits the NPS to review corporate transfers of "any controlling interest in a concessioner."

*See, e.g.,* Complaint for Aramark, Dec. 22, 2000, at 3, 18.

From the outset of these cases, a chief area of dispute has been the information available to the plaintiffs. Although an official administrative record has been filed with the Court, the plaintiffs seek information beyond the record which they believe bolsters their cases. Specifically, the plaintiffs seek two main classes of information:[1] (1) information related to the plaintiffs' preferred status in contract renewal, and (2) information related the NPS's possessory interest valuation process.

With respect to the preferred status issue, the plaintiffs claim that discovery is necessary to show that they are indeed entitled to a preferred status in the contract renewal process. The plaintiffs concede that their concession contracts do not explicitly grant them such a status, but contend nonetheless that it is an implied term in the contracts. Discovery of information surrounding the contract negotia-

---

1. The plaintiffs also seek information relating to "(1) the timing of the release of the concessioners's prospectuses and (2) the timing of payments for the concessioners' possessory interests and leasehold surrender interests." *See* Brief for Plaintiffs, Feb. 27, 2001, at 2. As the Court denies the plaintiffs' discovery motions on grounds unrelated to the subjects of discovery, it is unnecessary to explain these subjects herein. The other discovery issues are described only to provide a fuller understanding of issues under dispute.

tions will show, allege the plaintiffs, that a preferred status was contemplated and agreed upon by the parties.

With regard to the valuation issue, the plaintiffs claim that discovery is necessary to show that NPS's calculation of franchise fees and possessory interests is arbitrary and capricious. These calculations form an important part of the concession contract negotiation process, and an understanding how these values are calculated, argue the plaintiffs, is essential to challenging their validity. Although the administrative record includes a 13–page summary of the valuation process, the plaintiffs still claim that further information is necessary.

Besides seeking discovery, the plaintiffs also seek to share the aforementioned 13–page summary with their experts. Currently, the defendant argues that the summary contains important proprietary information, and that any expert who views it must agree never again to serve as an expert in a concession contract case against the NPS. The plaintiffs argue that such a condition prevents them from retaining an expert for their cases. They therefore propose a protective order that would permit limited disclosure to their experts.

## II. ANALYSIS

### A. The Plaintiffs' Demand for Discovery

■ Although the parties have characterized this as a discovery dispute, it is more properly understood as a dispute over the sufficiency of the administrative record. For, in cases brought under the APA and the Tucker Act, judicial review is normally confined to the administrative record.[2] Thus, any discovery request is necessarily predicated on the notion that the record is insufficient.[3] The Court below undertakes an analysis of the plaintiffs' plea for extra-record discovery, and finds that such discovery is not merited.

### 1. Judicial Review Under the Tucker Act and APA

By the text of the Administrative Procedure Act[4], a court is to evaluate agency action by "review[ing] the whole record or those parts of it cited by a party." 5 U.S.C. § 706. On its face, this provision says nothing about whether a court may look *beyond* the record to review an agen-

2. The plaintiffs argue that, by bringing their claims under the Tucker Act, they are not prevented from taking discovery, as would be the case in an action brought solely under the APA. The Court disagrees. Not only does the Tucker Act explicitly adopt the "arbitrary and capricious" review standard utilized in the APA, but courts hearing Tucker Act cases have consistently held that "the focal point for judicial review 'should be the administrative record already in existence, and not some new record made initially by the reviewing court.'" *Cubic Applications, Inc. v. United States*, 37 Fed. Cl. 339, 342 (1997) (quoting *Camp v. Pitts*, 411 U.S. 138, 142, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973)). *See also Space Mark, Inc. v. United States*, 45 Fed. Cl. 267, 272 (1999); *Pikes Peak Family Housing, L.L.C. v. United States*, 40 Fed. Cl. 673, 677 (1998)

(using the APA scope of review utilized by the D.C. Circuit to review Tucker Act claims).

3. The Court notes, however, that this argument is one the plaintiffs make in the alternative. They argue elsewhere that the record, even as currently compiled, provides sufficient basis for partial summary judgment in their favor. *See* Brief for Plaintiffs, Feb. 27, 2001, at 3.

4. Because the Tucker Act explicitly adopts the scope of review used by the APA, *see* 28 U.S.C. § 1491(b)(4), and caselaw applying the Tucker act mirrors APA review in all relevant respects, *see Ryder Move Management, Inc. v. United States*, 48 Fed. Cl. 380, 387–88 (2001), the Court omits reference to the Tucker Act as a matter of convenience.

cy action. Under long-standing precedent, however, judicial review is ordinarily "confined to the administrative record." *See Texas Rural Legal Aid, Inc. v. Legal Servs. Corp.*, 940 F.2d 685, 698 (D.C.Cir. 1991); *see also Camp v. Pitts*, 411 U.S. 138, 142, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973); *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971); *Environmental Defense Fund, Inc. v. Costle*, 657 F.2d 275, 284 (D.C.Cir.1981).

The rationale for this rule derives from a commonsense understanding of the court's functional role in the administrative state. The Court of Appeals in this Circuit has explained it as such:

> [J]udicial reliance on an agency's stated rationale and findings is central to a harmonious relationship between agency and court, one which recognizes that the agency and not the court is the principal decision maker. Were courts cavalierly to supplement the record, they would be tempted to second-guess agency decisions in the belief that they were better informed than the administrators empowered by Congress and appointed by the President. The accepted deference of court to agency would be turned on its head: the so-called administrative state would be replaced with one run by judges lacking the expertise and resources necessary to discharge the func-

tion they had arrogated unto themselves.

*San Luis Obispo Mothers for Peace v. NRC*, 751 F.2d 1287, 1325–26 (D.C.Cir. 1986) (en banc).

 Like most well-tested rules, the rule limiting judicial review to the record is subject to certain narrow exceptions. In this Circuit, four separate exceptions are well established.[5] First, a court may look beyond the record if "there was such a failure [by the agency] to explain administrative action [so] as to frustrate effective judicial review." *Camp*, 411 U.S. at 142–43, 93 S.Ct. 1241; *James Madison Ltd., Inc. v. Ludwig*, 82 F.3d 1085, 1095 (D.C.Cir.1996). Second, courts have looked beyond the record when it is necessary to determine whether the agency "considered all the relevant factors." *Environmental Defense Fund, Inc. v. Costle*, 657 F.2d 275, 285 (D.C.Cir.1981); *see also James Madison Ltd., Inc.*, 82 F.3d at 1095. Third, non-record review is merited when the agency may have "deliberately or negligently included documents that may have been adverse to its decision." *Kent County v. U.S. Environmental Protection Agency*, 963 F.2d 391, 395–96 (D.C.Cir. 1992); *see also James Madison Ltd., Inc.*, 82 F.3d at 1095. Finally, non-record review is also permissible in situations where there is a "strong showing of bad faith or improper behavior" on the part of the

---

5. This is not to suggest, however, that only four exceptions exist. Indeed, in 1989, the Circuit Court noted with approval eight separate circumstances where non-record review might be merited. These circumstances are:

> (1) when agency action is not adequately explained in the record before the court; (2) when the agency failed to consider factors which are relevant to its final decision; (3) when an agency considered evidence which it failed to include in the record; (4) when a case is so complex that a court needs more evidence to enable it to understand the issues clearly; (5) in cases where

> evidence arising after the agency action shows whether the decision was correct or not; (6) in cases where agencies are sued for a failure to take action; (7) in cases arising under the National Environmental Policy Act; and (8) in cases where relief is at issue, especially at the preliminary injunction stage.

*Esch v. Yeutter*, 876 F.2d 976, 991–92 (D.C.Cir.1989) (citing numerous cases and Stark & Wald, *Setting No Records: The Failed Attempts to Limit the Record in Review of Administrative Action*, 36 Admin. L.Rev. 333, 345 (1984)).

agency. *Community for Creative Non–Violence v. Lujan,* 908 F.2d 992, 997 (D.C.Cir.1990) (citing *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971)).

In the first two of the four circumstances, the record itself will reveal whether non-record review is merited. For example, it will be apparent from the face of the record whether the agency action is "adequately explained in the record," or whether an agency appears to have "considered all the relevant factors." Thus, in these circumstances, a party seeking non-record review has everything at its disposal (i.e., the record) needed to successfully urge the Court to look beyond the record.

A different situation, however, is presented by the second two circumstances. In those circumstances, the completeness of the record and the good faith behind it can only be grasped by looking beyond the record itself. Thus, in these circumstances, the only way a non-agency party can demonstrate to a court the need for extra-record judicial review is to first obtain discovery from the agency. *See Bar MK Ranches v. Yuetter,* 994 F.2d 735, 739 (10th Cir.1993) (permitting discovery when a party has made a "showing that the record may not be complete"); *Community for Creative Non–Violence,* 908 F.2d at 998 (permitting discovery upon a showing of "bad faith or improper behavior"); *Portland Audubon Society v. Endangered Species Committee,* 984 F.2d 1534, 1548 (9th Cir.1993) (permitting discovery where there is reason to infer bad faith or improper behavior by the agency); *Natural Resources Defense Council v. Train,* 519 F.2d 287, 292 (D.C.Cir.1975) (permitting "limited discovery" to ensure that "documents which are properly part of the administrative record have [not] been withheld").

■ To obtain discovery from an agency in an APA case, a party must overcome the standard presumption that the "agency properly designated the Administrative Record." *Bar MK Ranches,* 994 F.2d at 740. That is, a party must provide good reason to believe that discovery will uncover evidence relevant to the Court's decision to look beyond the record. Thus, a party must make a significant showing—variously described as a "strong", "substantial", or "prima facie" showing—that it will find material in the agency's possession indicative of bad faith or an incomplete record. *See Overton Park,* 401 U.S. at 420, 91 S.Ct. 814 (requiring a "strong showing" before extra-record inquiry will be permitted); *San Luis Obispo,* 751 F.2d at 1327 (requiring a party to make a "prima facie showing"); *Train,* 519 F.2d at 291 (finding discovery merited by a "substantial showing").

■ To determine whether a party has made a "strong showing" that a record is incomplete, it is necessary to comprehend what constitutes the "whole record." 5 U.S.C. § 706. First and most basically, a complete administrative record should include all materials that "might have influenced the agency's decision," and not merely those on which the agency relied in its final decision. *See Bethlehem Steel v. EPA,* 638 F.2d 994, 1000 (7th Cir.1980) (citing *National Courier Association v. Board of Governors of the Fed. Reserve Sys.,* 516 F.2d 1229, 1241 (D.C.Cir.1975)). Thus, if the agency decisionmaker based his decision on the work and recommendations of subordinates, those materials should be included as well. *See Bar MK Ranches,* 994 F.2d at 739 ("The complete administrative record consists of all documents and materials directly or indirectly considered by the agency."); *Novartis Pharmaceuticals v. Shalala,* 2000 WL 1769589, *2 (D.D.C.2000); *Miami Nation*

*of Indians of Ind. v. Babbitt,* 979 F.Supp. 771, 775 (N.D.Ind.1996); *Lloyd v. Illinois Regional Transp. Auth.,* 548 F.Supp. 575, 590 (N.D.Ill.1982); *Tenneco Oil Co. v. Department of Energy,* 475 F.Supp. 299, 317 (D.Del.1979). However, deliberative intra-agency memoranda and other such records are ordinarily privileged, and need not be included in the record. *See In re Subpoena Duces Tecum Served on Office of Comptroller of Currency,* 156 F.3d 1279, 1280 (D.C.Cir.1998); *Madison County Bldg. & Loan Ass'n v. Federal Home Loan Bank Bd.,* 622 F.2d 393, 395 n. 3 (8th Cir.1980); *National Nutritional Foods Ass'n v. Mathews,* 557 F.2d 325, 331 (2d Cir.1977).

Having defined the general scope of judicial review, as well as the instances meriting extra-record discovery and review, the Court now turns to the question of whether the plaintiffs may probe the agency's extra-record materials.

### 2. The Plaintiffs' Demand for Discovery

■ The plaintiffs argue that discovery is necessary to properly dispute (1) the literal terms of its concession contract, and (2) the NPS's financial valuations. The Court finds that the plaintiffs have not adduced sufficient material to merit discovery.

As explained above, discovery is only available if a party makes a "substantial showing" that material providing a basis for extra-record review will be uncovered. In the case at hand, the plaintiffs have only proffered a single affidavit, a declaration by David Morris Gossett. Mr. Gossett is an attorney for one of the plaintiffs, and declares the following:

> I believe that further discovery from the NPS, as requested in the discovery requests previously filed by Hamilton Stores, Amfac, and Aramark, will gener-

ate additional evidence that will assist the concessioners in proving the existence of [the aforementioned] implied contractual rights over the government's objection. For example, I have personally reviewed the documents produced by the National Park Service in response to NPHA's FOIA request. I found, and we cite in our briefs ... several documents that support our position that were not included in the government's Administrative Record.

> I ... believe that without further discovery summary judgment in favor of the government would be inappropriate because "facts essential to justify" the concessioners' opposition, Fed.R.Civ.P. 56(f), are within the control of the NPS and have not been produced pursuant to lawful and reasonable discovery requests previously filed.

Declaration of David M. Gossett, Feb. 27, 2001, at ¶ 6.

The Court finds this statement to be far short of the "substantial showing" necessary to gain discovery. First of all, the declaration completely misconstrues the showing necessary for discovery in an APA case. The declaration seems to suggest that, just because several non-record documents "support [their] position," discovery is therefore merited. But this is not the showing necessary to gain discovery; the mere fact that certain information is not in the record does not alone suggest that the record is incomplete. As explained above, large categories of information are routinely excluded from the record. *See In re Subpoena Duces Tecum Served on Office of Comptroller of Currency,* 156 F.3d at 1280; *Madison County Bldg. & Loan Ass'n,* 622 F.2d at 395 n. 3; *National Nutritional Foods Ass'n,* 557 F.2d at 331. And even if the Court were to generously infer that the existence of "additional evidence" suggests an incom-

plete record, this single statement in the plaintiffs' only declaration is much too little to merit discovery in this type of case— a type of case where discovery is rarely permitted.

In conclusion, the Court finds that the plaintiffs have not made the "substantial showing" necessary to obtain discovery in this case. Their discovery motions are therefore denied.

## B. The Protective Order Applicable to the Plaintiffs' Experts

■ In addition to their interest in obtaining more information, the plaintiffs also seek greater leeway in using certain parts of the administrative record. More specifically, the plaintiffs seek to share with their experts 13 pages of background information on the NPS's valuation practices. The defendant asserts that this information is highly sensitive, and demands that the information not be shown to an expert unless the expert agrees (1) never to serve as a consultant in a NPS concession contract bidding process, and (2) never again to serve as an expert in any concession contract case against the NPS. This is necessary, argues the defendant, because the expert's knowledge would put the NPS or another concessioner at a distinct disadvantage in any future concession contract bidding or litigation. *See* Declaration of Cynthia Orlando, Jan. 23, 2001. The plaintiffs argue that this restriction prevents them from retaining an expert. The Court finds that, although a protective order is necessary, neither party's order is appropriate. Accordingly, a separate protective order consistent with the requirements discussed below shall be issued this date.

■ Federal Rule of Civil Procedure 26(c)(7) permits a court to issue a protective order to require that "a trade secret or other confidential research, de-

velopment, or commercial information not be revealed or be revealed only in a designated way." As the Supreme Court has explained, this rule "confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 36, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984). In exercising this discretion, a court is to engage in a "balancing of various factors: the requester's need for information . . ., its relevance to the litigation at hand, the burden of producing the sought-after material, and the harm which disclosure would cause to the, party seeking to protect the information." *Burka v. United States Department of Health and Human Servs.,* 87 F.3d 508, 517 (D.C.Cir.1996). In crafting a protective order, a court may "limit the conditions, time, place, or topics of discovery; or limit the manner in which a trade secret or other confidential research, development, or commercial information may be revealed." *Id.* at 518.

Viewing the dispute now before it, the Court first observes that the information sought is of high importance to this case; indeed, the legitimacy of the NPS's financial valuations is one of the core issues the plaintiffs address in their complaint. *See, e.g.,* Complaint for Aramark, Dec. 22, 2000, at 3. From this observation, the Court logically infers that the plaintiffs' need for this information is great. Nonetheless, the Court also notes the NPS's declaration of Cynthia Orlando, which suggests that fairness of the negotiating process may be compromised if the valuation information is made public. *See* Declaration of Cynthia Orlando, Jan. 23, 2001. In issuing a protective order then, the Court seeks a middle ground where the plaintiffs will be fully able to press their case, and the NPS's proprietary interests will be compromised no more than necessary.

With this goal in mind, the Court concludes that a protective order is appropriate, and that it should be designed as follows:

First, any expert or consultant permitted to view the valuation data shall agree not to disseminate in any way any of the confidential information viewed, unless expressly permitted by the NPS or the terms of the protective order. This is a standard requirement, and one to which neither party objects.

Second, any expert permitted to view the valuation data shall agree not to serve as a consultant in any future concession contract bidding involving the NPS.[6] This requirement is necessary to protect the NPS's substantial and ongoing interest in a fair bidding process. *See* Declaration of Cynthia Orlando, Jan. 23, 2001. Although the plaintiffs argue that this prevents them from retaining an expert, the better characterization is that it only increases the cost of retaining an expert. There is no doubt that, at some price level, some consultant would be willing to forgo his future profits from NPS concessioners.[7] While the Court does not wish to unnecessarily escalate the costs of litigation, the Court sees this as the proper balance considering the significant interest of the NPS as well as the significant litigation resources that the plaintiffs have demonstrated they possess. Moreover, the Court is not fully convinced that the population of available experts is so homogenous, and the NPS concession contract business segment so large, that all available financial advisors will balk at a case requiring them to forgo certain future dealings with concessioners. If these unlikely circumstances are indeed the case, and the cost of an expert is drastically exorbitant, the plaintiffs may, of course, always file a motion for reconsideration accompanied by the proper affidavits. For now however, this requirement shall stand.

Third, the expert shall agree to reveal to all adverse parties in any future litigation the general nature and scope of his knowledge gained from this case. This is a routine requirement which ensures that a party will not unwittingly be prejudiced through another's prior involvement in other litigation.

## III. CONCLUSION

In summary, the Court today holds (1) that the plaintiffs are not entitled to any discovery from the NPS and (2) that the plaintiffs may share the 13–page summary of the NPS's valuation processes with their experts under the conditions described in the protective order issued separately this date. Further, in Civil Action No. 00–2838, it is hereby

ORDERED that the defendants' motion for a protective order as to discovery [41–1] is GRANTED; further, it is

ORDERED that defendants' motion for a protective order as to the use of confi-

---

6. The Court uses the term "consultant" to mean one who advises the concessioner during the contracting process. Notably, the Court does *not* seek to prevent the financial advisor from serving as an *expert* in future litigation or arbitration. Because the NPS's interests are predicated on the fairness of the bidding process, there is no need to prevent a financial advisor from participating in litigation.

7. Moreover, it is not at all clear that an expert would demand more compensation for his services in this case. Because an expert serving in this case would still be able to participate in future litigation, see note 6, *supra*, it is quite conceivable that an expert would find it desirable to learn the NPS's confidential valuation formulas. Such knowledge would presumably make him an attractive—and perhaps more expensive—expert for future concession contract litigation.

dential information [22–1] is GRANTED in part and DENIED in part; further, it is

ORDERED that the plaintiff's motion for discovery [30–1] is DENIED; further it is

ORDERED that the plaintiff's motion for a protective order as to the use of confidential information [15–1] is GRANTED in part and DENIED in part.

Further, in Civil Action No. 00–2937, it is hereby

ORDERED that the plaintiff's motion for a protective order and to compel discovery [10–1] is GRANTED in part and DENIED in part; further, it is

ORDERED that the defendants' motion for a protective order as to the use of confidential information [18–1] is GRANTED in part and DENIED in part; further, it is

ORDERED that the plaintiff's motion to compel discovery [26–1] is DENIED; further, it is

ORDERED that the defendants' protective order as to discovery [32–1] is GRANTED.

SO ORDERED.