CENTER FOR NATIVE ECOSYS-TEMS, Biodiversity Conservation Alliance, Center for Biological Diversity, Defenders of Wildlife, and Natural Resources Defense Council, Petitioners,

v.

Ken SALAZAR, Secretary of the Interior, and Rowan Gould, Director, U.S. Fish & Wildlife Service, Respondents,

and

State of Wyoming, Wyoming Farm Bureau Federation, and Wyoming Stock Growers Association, Interveners.

Civil Action No. 09–cv–01463–AP.

United States District Court, D. Colorado.

April 14, 2010.

Jason C. Rylander, Defenders Of Wildlife, Eric R. Glitzenstein, Meyer Glitzenstein & Crystal, Washington, DC, Michael Ray Harris, University of Denver–Sturm College of Law, Denver, CO, for Petitioners.

Michael Richard Eitel, U.S. Department of Justice, Denver, CO, for Respondents.

Affie B. Ellis, James C. Kaste, Wyoming Attorney General's Office, Cheyenne, WY, Ronald Walter Opsahl, Mountain States Legal Foundation, Lakewood, CO, for Interveners.

## MEMORANDUM OPINION AND ORDER

KANE, District Judge.

The Preble's meadow jumping mouse (*Zapus hudsonius preblei*) ("Preble's") is a small rodent endemic to the foothills of southeastern Wyoming and the eastern edge of the Front Range in Colorado. This subspecies of meadow jumping mouse has a very long tail, large hind feet adapted for jumping, and a dark stripe running down its back of otherwise gray to orange-brown fur. Though not a particularly charismatic mammal, of popular interest is Preble's acrobatic ability to jump up to a foot and a half in the air. Of biological significance is the subspecies's nocturnality, slow rate of reproduction, and evolutionary history since stranded in the region at the end of the last ice age.

In 1998, finding that the Preble's was a subspecies[1] that was "likely to become endangered within the foreseeable future" in its historic range in both Colorado and Wyoming due to habitat modification and loss, the U.S. Fish and Wildlife Service ("FWS") listed the Preble's as a threatened species. Final Rule to List the Preble's Meadow Jumping Mouse as a Threatened Species, 63 Fed.Reg. 26517, 26526 (May 13, 1998)(codified at 50 C.F.R. pt. 17). In 1999 FWS received several petitions to remove the Preble's from the Endangered Species Act's ("ESA") list of threatened and endangered species pursuant to 16 U.S.C. § 1533(b)(3)(A); however, FWS found that these petitions did not present substantial scientific or commercial information warranting de-listing and declined to proceed with further status review. 90–Day Finding for a Petition to Delist the Preble's Meadow Jumping

---

1. Under the Endangered Species Act, the definition of "species" includes "any subspecies of fish or wildlife or plants, and any distinct population segment of any species of vertebrate fish or wildlife which interbreeds when mature." 16 U.S.C. § 1532(16).

Mouse in Colorado and Wyoming, 68 Fed. Reg. 70,523 (Dec. 18, 2003). The FWS then designated critical habitat for the Preble's in both Colorado and Wyoming in 2003. *See* Designation of Critical Habitat for the Preble's Meadow Jumping Mouse (Zapus hudsonius preblei), 68 Fed.Reg. 37,276 (June 23, 2003)(codified at 50 C.F.R. pt. 17). Soon after the designation of critical habitat, the State of Wyoming and a Colorado organization filed separate petitions to de-list the Preble's claiming that it was neither a valid subspecies nor endangered or threatened in the region. 90–Day Finding for Petition to Delist the Preble's Meadow Jumping Mouse in Colorado and Wyoming and Initiation of a 5–Year Review, 69 Fed.Reg. 16,944, 16,945 (Mar. 31, 2004).

Unlike FWS's review of the 1999 petitions, FWS concluded that the 2003 petitions presented substantial information that potentially warranted de-listing of the Preble's. Accordingly, FWS commenced a status review under 16 U.S.C. § 1533(b)(3)(B); *see* 12–Month Finding on a Petition to Delist the Preble's Meadow Jumping Mouse (Zapus hudsonius preblei) and Proposed Delisting of the Preble's Meadow Jumping Mouse, 70 Fed.Reg. 5,404 (Feb. 2, 2005). Pursuant to this status review, FWS, relying in large part on unpublished taxonomic studies indicating that the Preble's was not a discrete taxonomic entity, issued a proposed rule to remove the Preble's from the ESA's list of threatened and endangered species. Following the issuance of this proposed rule, FWS solicited comments and peer reviews; reviewed a contradictory genetic analysis of the Preble's from the U.S. Geological Survey; and convened a panel of experts to weigh in on competing scientific data. *See* AR G 1–1 at 010456. On January 4, 2007, the state of Wyoming sued FWS for failure to publish a final de-listing determination. AR G 1–1 at 010456. FWS settled with Wyoming, agreeing to either withdraw the 2005 proposed de-listing or propose a new rule concerning the status of the Preble's. *Id.*

Just two months later, however, on March 16, 2007, the Solicitor of the United States Department of the Interior ("Solicitor") issued a legal opinion that further impacted FWS's discordant status determinations. Memorandum re: The Meaning of "In Danger of Extinction Throughout All or a Significant Portion of its Range" (Mar. 16, 2007), Doc. 34–2. The memorandum opinion set forth a novel interpretation of the meaning of the statutory phrase "in danger of extinction throughout all or a significant portion of [a species'] range" which is located in the definitions of both "endangered species" and "threatened species" in the ESA.[2] The opinion defines "range" as the range in which a species currently exists, not the historic range of the species. Contrary to DOI's longstanding policy, the opinion also permits the Secretary to list and de-list a species in less than its presently occupied range. Neither the DOI nor the Solicitor's office engaged in rulemaking or provided notice of the proposed interpretation or opportunity for public comment prior to the memorandum issuance.

The FWS did, however, solicit comments on the memorandum opinion and its application to the Preble's when it published its

---

**2.** "The term 'endangered species' means any species which is in danger of extinction throughout all or a significant portion of its range other than a species of the Class Insecta determined by the Secretary to constitute a pest whose protection under the provisions of this Act would present an overwhelming and overriding risk to man." 16 U.S.C. § 1532(6). "The term 'threatened species' means any species which is likely to become an endangered species within the foreseeable future throughout all or a significant portion of its range." 16 U.S.C. § 1532(20).

revised proposed rule to amend the listing of the Preble's in November 2007. Revised Proposed Rule to Amend the Listing for the Preble's Meadow Jumping Mouse (Zapus hudsonius preblei) To Specify Over What Portion of Its Range the Subspecies is Threatened, 72 Fed.Reg. 62,992 (Nov. 7, 2007) ("[W]e seek information, data, and comments concerning ... [o]ur analysis and conclusions regarding 'significant portion of its range] in light of the March 14, 2007, Department of the Interior, Solicitor Memorandum...."). As the Rule's title indicates, In light of the Solicitor's opinion, this new proposed rule was intended "to specify over what portion of its range the [Preble's] was threatened." *Id.* In the proposed rule, the FWS determined that though the Preble's was a valid subspecies that should not be de-listed based on taxonomic revision; it was also "a subspecies not threatened throughout all of its range." *Id.* FWS proposed keeping the Preble's listed in Colorado and de-listing it in Wyoming. *Id.* Petitioners Center for Native Ecosystems, Biodiversity Conservation Alliance, Center for Biological Diversity, Defenders of Wildlife, and Natural Resources Defense Council (collectively "Petitioners") submitted extensive comments objecting to the proposed de-listing in Wyoming.

On July 10, 2008, FWS published its Final Rule, amending the listing determination for the Preble's to remove legal protections for the mouse in Wyoming. After filing a 60–day notice of intent to sue for violations of the ESA on September 4, 2008, Petitioners now challenge FWS' (1) de-listing of the Preble's in Wyoming and (2) listing of the Preble's as threatened instead of endangered in Colorado. This controversy reaches beyond the grasslands of Wyoming and Eastern Colorado, as Petitioners also challenge (3) the DOI's interpretation of the ESA phrase "significant portion of its range," asserting that this interpretation is contrary to the statutory purpose of the ESA and that in its formulation and adoption of this policy DOI failed to comply with the procedural requirements of the ESA.

In their Motion to Supplement the Administrative Record, Doc. 32, Petitioners allege that FWS failed to provide the complete Administrative Record including all materials directly or indirectly considered by FWS decision makers in the decision to amend the Preble's listing. Petitioners seek to complete and/or supplement[3] the Administrative Record with two categories of materials: (1) documents from consultations between various federal agencies and FWS' Wyoming Field Office regarding the status and threats to the Preble's which were referenced in the final rule and (2) documents directly and indirectly considered by the DOI when the Solicitor issued the 2007 Memorandum Opinion. Petitioners urge that the Respondents should be compelled to include these materials in the Administrative Record in order to allow meaningful judicial review of the challenged agency actions. For the reasons stated below, this motion is GRANTED.

## LEGAL STANDARDS AND ANALYSIS

Petitioners challenge Respondents' actions under the Endangered Species Act, 16 U.S.C. § 1531 *et seq.* ("ESA"). As this statute fails to define or specify the standard of review to be used in examining Respondents' actions, the Administrative Procedures Act ("APA"), 5 U.S.C. § 500, *et seq.*, provides the framework for this appeal. Accordingly, I must apply the standards articulated in the APA in con-

---

**3.** As will be discussed *infra* at pp. 1274–75, Petitioners misuse the word "supplement." For a discussion of the differences between "supplementing" and "completing" the record, *see infra* n. 7.

sidering the merits of Petitioners' Motion to Supplement the Administrative Record.

*Judicial Review of Informal Rulemaking under the APA*

Under the APA, I review Respondents' informal rulemaking to determine if it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). As the Supreme Court held in *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971), "the generally applicable standards of § 706 require the reviewing court to engage in a substantial inquiry." *Id.* at 415, 91 S.Ct. 814. At the same time, the Supreme Court acknowledged "the Secretary's decision is entitled to a presumption of regularity." *Id.* The Court emphasized, however, that the "presumption is not to shield [the Secretary's] action from a thorough, probing, in-depth review." *Id.* The tension inherent in these mandates is revealed by the Court's own declaration that though "this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency." *Id.* at 416, 91 S.Ct. 814.

In conducting my review of Respondents' actions, I must balance these mandates. In order to afford appropriate deference, I review the administrative agency's decision as an appellate body. *See Olenhouse v. Commodity Credit Corp.*, 42 F.3d 1560, 1580 (10th Cir.1994). As a result, I apply the Federal Rules of Appellate Procedure and, generally, limit my review to the evidence relied upon by Respondents in reaching the challenged decision. *Id.* at 1580. In order to ensure a "substantial inquiry," however, I also apply a variety of rules and exceptions consistent with my responsibility to ensure meaningful judicial review. Most relevant to the instant controversy, I apply this general framework to the process of determining the sufficiency of the Administrative Record submitted by Respondents.

*Decisions Challenged in the Instant Case*

In order to determine the proper scope of the Administrative Record in this case, it is first necessary to determine the nature and scope of the decisions challenged by Petitioners. Respondents argue that Petitioners' challenge is limited to the Final Rule de-listing the Preble's throughout the Wyoming portion of its range. Petitioners counter that they are challenging both the Final Rule and the Memorandum Opinion upon which it is based.

As the 10th Circuit directed in *Olenhouse*, "[r]eviews of agency action in the district courts must be processed as appeals," and "a district court should govern itself by referring to the Federal Rules of Appellate Procedure." 42 F.3d at 1580. Accordingly, I must judge the sufficiency of the Petition for relief under Federal Rule of Appellate Procedure 15(a)(2)(C). Rule 15(a)(2)(C) states that a party challenging an agency decision by submitting a petition for review "must ... specify the order or part thereof to be reviewed." Failure to do so may result in dismissal. "A mistaken or inexact specification of the order to be reviewed will not be fatal to the petition, however, if the petitioner's intent to seek review of a specific order can be fairly inferred from the petition for review or from other contemporaneous filings, and the respondent is not misled by the mistake." *Entravision Holdings, LLC v. Fed. Commc'ns Comm'n*, 202 F.3d 311, 313 (D.C.Cir.2000).

On its face, the Petition for Review clearly articulates the "orders" for which Petitioners seek review. As both parties acknowledge, the Petition specifies both a challenge to FWS's decision to de-list the Preble's in Wyoming and the FWS' failure

to subject the Memorandum Opinion to notice and comment pursuant to 16 U.S.C. § 1533(h) before its issuance by the Solicitor's Office.[4] Contrary to Respondents' argument, however, the Petition also indicates a substantive challenge to the Memorandum Opinion upon which the de-listing decision was based. In their First Claim for Relief, Petitioners allege:

> Defendant's adoption of [the] policy [in the Memorandum Opinion] interpreting the phrase 'significant portion of its range,' and specifically its application here, represents a dramatic reversal of longstanding agency policy and practice, is contrary to the plain language of the ESA, and undermines the purposes of the ESA to afford sufficient species protection to not only stave off a species' extinction, but to bring about the species' recovery.

Petition for Review, Doc. 1, p. 13. Unless adorned with flashing red-lights, it is unclear how Petitioners could provide Respondents with any more notice that they intended to challenge the substance of the Memorandum Opinion. In light of this language, Petitioners have met their pleading burden under Federal Rule of Appellate Procedure 15(a)(2)(C).

■ Respondents further argue that, even if the Petition provided notice of Petitioners' substantive challenge to the Memorandum Opinion, such a challenge is an inappropriate facial challenge. Though

Respondents are correct in their articulation of the relevant law, the restriction on facial challenges does not apply in this case.[5] In their First Claim for Relief Petitioners clearly state that they are challenging *the application* of the policy articulated in the Memorandum Opinion as applied in the decision to de-list the Preble's in Wyoming. *Id.* As the Supreme Court has made clear, such "as applied" challenges are the appropriate means by which a party may challenge a broad agency policy document. *See Ohio Forestry Ass'n v. Sierra Club,* 523 U.S. 726, 118 S.Ct. 1665, 140 L.Ed.2d 921 (1998); *Summers v. Earth Island Institute,* —— U.S. ——, 129 S.Ct. 1142, 173 L.Ed.2d 1 (2009). Accordingly, Petitioners have clearly articulated a permissible challenge to the substantive policy articulated in the Memorandum Opinion and may seek documents related to the formulation of that document.

Having determined that the Administrative Record in this case properly contains documents relating to both the Final Rule de-listing the Preble's in the Wyoming portion of its range and the substance of the Memorandum Opinion upon which the decision was based, I now turn to the sufficiency of the record submitted by Respondents.

*Judicial Review of the Sufficiency of the Administrative Record*

The APA directs that "the court shall review the whole record or those parts of

---

**4.** Respondents argue that the procedural challenge to the Memorandum Opinion is "a purely legal claim" for which the production of documents is not necessary. Though I am not convinced that such a limitation exists, I find it unnecessary to address this issue given my finding that Petitioners have raised a permissible substantive challenge to the Memorandum Opinion.

**5.** Respondents cite two cases in support of their argument, *Rocky Mountain Oil & Gas Ass'n v. Watt,* 696 F.2d 734, 741 (10th Cir. 1982) and *Glamis Imperial Corp. v. Babbitt,*

slip opinion, 00–cv–1934–W (S.C.Cal. Oct. 31, 2000). In *Glamis Imperial Corp.,* there was no final agency action to review. In the instant case, however, the de-listing decision relying upon the Memorandum Opinion constitutes challengeable agency action. In *Rocky Mountain Oil & Gas,* as in this case, the petitioner challenged the Solicitors' interpretation of a statutory provision as applied in the context of a final agency action. The court found that the Petition for Review of the Solicitors' interpretation was ripe for judicial review.

it cited by a party...." 5 U.S.C. § 706. The definition of the "whole record" is not entirely clear, but in *Overton Park* the Supreme Court directed lower courts to confine their review of agency decisions to "the full administrative record that was before the Secretary at the time he made his decision." 401 U.S. at 420, 91 S.Ct. 814. The Court clarified this mandate in *Camp v. Pitts*, 411 U.S. 138, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973), stating that "[t]he focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Id.* at 142, 93 S.Ct. 1241; *see also Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743–44, 105 S.Ct. 1598, 84 L.Ed.2d 643 (1985) ("The task of the reviewing court is to apply the appropriate APA standard of review, 5 U.S.C. § 706, to the agency decision based on the record the agency presents to the reviewing court").

In accordance with my role in reviewing agency action under § 706, I begin my review of the sufficiency of the submitted Administrative Record by applying a "presumption of regularity" to the record as it is designated by the agency. In order to ensure a "probing inquiry" and a "thorough, probing, in-depth review," however, I also consider the exceptions by which Petitioners may prove the insufficiency of a record as designated by the agency and introduce additional documentation and evidence. Though courts differ in their formulation and application of these exceptions,[6] such documentation and evidence generally takes two distinct, yet often confused, forms: (1) materials which were actually considered by the agency, yet omitted from the administrative record ("completing the record"); and (2) materials which were not considered by the agency, but which are necessary for the court to conduct a substantial inquiry ("supplementing the record").[7]

In the instant controversy, though their motion is described as an effort to "supplement the record," Petitioners first seek to "complete the record" with documents they assert were before the agency decision makers at the time they made the

---

**6.** As illustration of the different approaches taken by courts in conducting review under § 706, *compare Cronin v. U.S. Dep't of Agric.*, 919 F.2d 439, 444 (7th Cir.1990) ("Confining the district court to the record compiled by the administrative agency rests on practical considerations that deserve respect. Administrative agencies deal with technical questions, and it is imprudent for the generalist judges of the federal district courts and courts of appeals to consider testimonial and documentary evidence bearing on those questions unless the evidence has first been presented to and considered by the agency") *with Asarco, Inc. v. U.S. Envtl. Prot. Agency*, 616 F.2d 1153, 1160 (9th Cir.1980) ("The court cannot adequately discharge its duty to engage in a 'substantial inquiry' if it is required to take the agency's word that it considered all relevant matters").

**7.** Such confusion has significant consequences for courts and litigants. There are meaningful differences between the standard for establishing that an agency should be required to "complete the record" with documents it actually considered versus the showing required to establish that a court should "supplement the record" with materials which were not before the agency when it made the challenged decision. For an excellent discussion of the differences between "completing the record" and "supplementing the record" *see Cape Hatteras Access Pres. Alliance v. U.S. Dep't of Interior*, 667 F.Supp.2d 111 (D.D.C.2009). Perhaps unnecessarily contributing to the confusion, I use terminology conflicting with the *Cape Hatteras* court (what I term "completing the record," the *Cape Hatteras* court refers to as "supplementing the record;" what I term "supplementing the record," the *Cape Hatteras* court refers to as "going beyond the record"). It is my belief, however, that the terminology used in this opinion is most logically consistent with the underlying differences and has the greatest promise of eliminating any confusion.

challenged decisions. As an alternative, Petitioners argue if the documents were not considered by Respondents, they are so relevant to the challenged decision that they should have been considered and, accordingly, are properly included in the Administrative Record.

### Completing the Record

In order to decide whether the administrative record submitted by Respondents is complete I must determine whether the record contains "all documents and materials directly or indirectly considered by the agency." *Bar MK Ranches v. Yuetter*, 994 F.2d 735, 739 (10th Cir.1993). Consistent with the deference owed an agency under § 706, I assume that the agency properly designated its record absent clear evidence to the contrary. *Id.* at 740. Therefore, the burden to rebut the presumption of a complete record initially rests with Petitioners who must show by clear evidence that the record fails to include documents or materials considered by Respondents in reaching the challenged decision.

To overcome the presumption of regularity and meet the burden of proving that the record designated by the agency is incomplete, Petitioners must clearly set forth in their motion: (1) when the documents were presented to the agency; (2) to whom; (3) and under what context. *WildEarth Guardians v. Salazar*, 713 F.Supp.2d 1243, 1254–55, 2010 WL 1413112, *5, 2010 U.S. Dist. LEXIS 32256, *17 (D. Colo. April 1, 2010) (citing *Pacific Shores Subdivision v. U.S. Army Corps of Eng'rs*, 448 F.Supp.2d 1, 7 (D.D.C.2006)).

This showing is not, however, sufficient grounds for admitting the proffered documents into the Administrative Record. Petitioners must also establish that these documents were directly or indirectly considered by the relevant agency decision makers.[8] *Bar MK*, 994 F.2d at 739.

The rationale for limiting the record to those documents directly or indirectly considered by relevant agency decision makers is grounded in the need to afford adequate deference to agency expertise while ensuring meaningful judicial review of the full administrative record. *Id.* at 739. Determining whether and what documents and materials were directly considered by the relevant decision makers in the decision making process, based on clearly alleged facts, is ordinarily a straightforward proposition. *See, e.g., id.* at 739–40 (finding relevant decision makers to be those individuals specified in the agency's established decision making process). Substantial review must reach these materials because they clearly underlie any rational basis for the decision.

Despite Respondents' argument to the contrary, the whole record also includes documents besides those which "literally pass[ed] before the eyes of the final agency decisionmaker[s]." *Clairton Sportsmen's Club v. Pa. Turnpike Comm'n*, 882 F.Supp. 455, 465 (W.D.Pa. 1995); *Miami Nation of Indians of Ind. v. Babbitt*, 979 F.Supp. 771, 777 (N.D.Ind. 1996). If the agency decision maker based his decision on the work and recommendations of subordinates, those materials should be included in the record. *Wild-*

---

8. As with all agency actions, the identification of relevant decision makers is entitled to deference and is presumed proper absent clear evidence to the contrary. Though Petitioners argue "many more agency officials 'worked on' this highly controversial rulemaking than the government acknowledges," this does not necessarily expand the universe of relevant decision makers. Such proof may, however, be relevant to the extent Petitioners argue that documents and materials were indirectly considered. *See WildEarth Guardians v. Salazar*, 713 F.Supp.2d 1243, 1259–62, 2010 WL 1413112, *10–12, 2010 U.S. Dist. LEXIS 32256, *34–37 (D. Colo. April 1, 2010).

*Earth Guardians v. Salazar,* 713 F.Supp.2d 1243, 1255–56, 2010 WL 1413112, *6, 2010 U.S. Dist. LEXIS 32256, *22 (D. Colo. April 1, 2010) (citing *Amfac Resorts, LLC v. U.S. Dep't of Interior,* 143 F.Supp.2d 7, 12 (D.D.C.2001)). The proper touchstone remains the decision makers' actual consideration, and a party moving to complete the record must show with clear evidence the context in which materials were considered by decision makers in the relevant decision making process. For example, if a party moves to include a study that was cited in the recommendations of subordinates, the party need not show that the decision maker read the study, but the party must show that the study was so heavily relied on in the recommendations that the decision maker constructively considered it. *See WildEarth Guardians v. Salazar,* 2009 WL 4270039, *4, 2009 U.S. Dist. LEXIS 110588, *11 (D.Ariz.2009).

Petitioners seek to complete the record with documents (1) relating to the formulation of the Memorandum Opinion and (2) with the Biological Assessments ("BAs") and Biological Opinions ("BiOps") associated with formal and informal consultations between various government agencies and the U.S. Fish and Wildlife Service concerning impacts of various projects in Wyoming on the Preble's.[9]

■ With respect to the documents relating to the formulation of the Memorandum Opinion, Petitioners need not meet the clear evidence standard as Respondents acknowledge that they have not designated an Administrative Record for that decision. As the agency has completely failed to designate a record for this decision, it is appropriate and necessary to remand to the agency so that it may, consistent with this decision, compile the appropriate Administrative Record consisting of the documents and materials "directly and indirectly considered" by the relevant decision makers.[10]

■ With respect to the relevant BAs and BiOps, however, Petitioners have failed to adequately set forth (1) when the BAs and BiOps were presented to the agency; (2) to whom; (3) and under what context. Petitioners do not meet their burden of providing clear evidence that the agency has failed to properly designate the Administrative Record "by asserting, speculatively, that documents were relevant or before the agency at the time it made its decision." *WildEarth Guardians v. Salazar,* 713 F.Supp.2d 1243, 1253–55, 2010 WL 1413112, *4–5, 2010 U.S. Dist. LEXIS 32256, *15 (D. Colo. April 1, 2010)(citing *Pacific Shores,* 448 F.Supp.2d at 6–7).

Even if I were to find that Petitioners' showing constituted "clear evidence," however, Petitioners have failed to adequately establish that the BAs or BiOps were di-

---

9. Under the ESA, these BAs and BiOps must include detailed information on the proposed action and its potential effects on the Preble's and address whether the proposed action will jeopardize the continued existence of the Preble's or impair any critical habitat. 16 U.S.C. § 1536.

10. I recognize that some of these documents may be protected by the attorney-client and/or deliberative process privileges. Whether such materials are protected by privilege will be determined on an *ad hoc* basis. *Cf. Amfac Resorts,* 143 F.Supp.2d at 13. Accordingly, in order to allow meaningful review of any as-

sertions of privilege Respondents shall· compile, as necessary, a privilege log containing:

at a minimum … the author or origin of the document; any documents or materials attached to the document; all recipients of the document, including addresses and persons or entities receiving copies; the date of origin of the document; and a description of the contents of the document in sufficient detail as to reveal why it is subject to the asserted privilege.

*Carbajal v. Lincoln Benefit Life Co.,* 2007 WL 3407345, at *3, 2007 U.S. Dist. LEXIS 86753, at *8 (D.Colo. Nov. 13, 2007).

rectly or indirectly considered by the relevant decision makers. As a threshold matter, Petitioners fail to show that the relevant decision makers directly considered these BiOps. Though Petitioners argue that the universe of relevant decision makers should be expanded to include officials in FWS' Wyoming Office, the agency's designation of the relevant decision makers is entitled to deference. Petitioners cursory allegations are insufficient to overcome this presumption.[11]

Petitioners also fail to adequately establish that these documents were indirectly considered by the relevant decision makers. As noted above, for purposes of inclusion in the record, documents are indirectly considered where they are the work and recommendations of subordinates upon which the relevant decision makers based their decision. *WildEarth Guardians v. Salazar*, 713 F.Supp.2d 1243, 1255–56, 2010 WL 1413112, *6, 2010 U.S. Dist. LEXIS 32256, *22 (D. Colo. April 1, 2010). Here, the relevant decision makers received summary information from the Wyoming Field Office on consultations between 1998 and 2008 relevant to the status of the Preble's. The Wyoming Field Office also sent two BiOps in their entirety which have been included in the Administrative Record. Petitioners assert that the Colorado Field Office indirectly considered the other BiOps and BAs because they considered and referenced information contained in the summary of these consultations in their final decision.

At first glance, Petitioners' argument that the Colorado Field Office constructively considered the underlying BiOps and BAs when staff considered a summary of these consultation documents is persuasive. Upon further investigation, however, it is apparent that this argument lacks merit. The summary, cursory at best, lists in table form the names and dates of four-teen projects or actions regarding which the Wyoming Field Office consulted with other federal agencies. The column relevant to the Preble's status is that marked "Amt. Take." A typical entry in the "Amt. Take" column is that for a FHWA/WY-DOT project at Antelope Gap Rd.: "1 acre-temp loss, 0.33 acre-perm. loss, 215 ft riparian hbtt temp." Although the BiOps and BAs may have served as the basis for this table, it is quite a leap (even for the Preble's) to infer that anyone reading this table relied so heavily on the underlying reports that they had constructively considered the underlying consultation documents.

In effect, petitioners argue that if a document considered by the relevant agency decision maker contains references to other documents, those underlying documents must be included in the record because they were indirectly considered (often referred to as "consideration through citation"). In accordance with the majority of courts, I find that the consideration through citation argument stretches the chain of indirect causation to its breaking point and cannot be a basis for compelling completion of an Administrative Record. *WildEarth Guardians v. Salazar*, 2009 WL 4270039, *4 (D.Ariz.2009). Petitioners have failed to establish that a decision maker reading two to four statistics on a project has constructively considered BAs and BiOps representing in great detail the quantitative and qualitative findings for the biological and environmental impacts of a government project on the Preble's and accompanying recommendations. As Petitioners have provided no additional (or clear) evidence establishing that Colorado Field Office staff considered the BiOps and BAs, and because a party considering the summary table does not rely so heavily on the underlying consultation documents as

11. *See supra* n. 8.

to constitute constructive consideration, they have failed to overcome the deference owed to the agency's designation of the Administrative Record.

A party attempting to convince a reviewing court to expand the scope of its review properly bears a sizeable burden if it is to convince the court to forego the customary deference owed an agency's determination of what constitutes the record. Petitioners have failed to meet this burden, and these documents are not properly admitted as "completing the record." Whether the relevant agency decision makers *should* have properly considered these underlying reports in order to provide a rational basis for the decision to de-list the Preble's in Wyoming is a mouse of a different tail.

### Supplementing the Record with Extra–Record Evidence

Consistent with the "presumption of regularity" noted above, I am generally reluctant to allow parties to supplement the record with evidence not considered by the agency in reaching its challenged decision. As the D.C. Circuit has noted, "To review more than the information before the Secretary at the time she made her decision risks our requiring administrators to be prescient or allowing them to take advantage of post hoc rationalizations." *Walter O. Boswell Mem'l Hosp. v. Heckler*, 749 F.2d 788, 792 (D.C.Cir.1984). Despite my general reluctance, however, I must consider the exceptions which allow a party to introduce extra-record evidence. Though these exceptions are grounded in the Supreme Court's ruling in *Overton Park*, which allowed lower courts to conduct some form of *de novo* review "when the action is adjudicatory in nature and the agency factfinding procedures are inadequate ... [and] when issues that were not

before the agency are raised in a proceeding to enforce nonadjudicatory agency action ...," 401 U.S. at 415, 91 S.Ct. 814, they have taken on a life of their own.

As two commentators argued nearly fifteen years after the Court's decision in *Overton Park*, "courts have developed so many unwritten exceptions to the doctrine of record review, that industrious advocates now can introduce any evidence they choose in cases reviewing informal administrative action." Steven Stark and Sarah Wald, *Setting No Records: The Failed Attempts to Limit the Record in Review of Administrative Action*, 36 Admin. L.Rev. 333, 336 (1984). Though this proclamation is arguably overstated,[12] the truth remains that courts have expanded the exceptions under which they will allow parties to supplement the record upon judicial review. *See, e.g., American Mining Cong. v. Thomas*, 772 F.2d 617, 626 (10th Cir.1985)(citing six exceptions); *Esch v. Yeutter*, 876 F.2d 976, 991 (D.C.Cir.1989)(citing eight exceptions); *but see Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374, 1381 (Fed.Cir.2009)(questioning the validity of *Esch*).

Unfortunately, lower courts have failed to articulate coherently and consistently the exceptions which justify supplementation of the record. For example, though the 10th Circuit recognized five possible exceptions in *Custer County Action Ass'n v. Garvey*, 256 F.3d 1024, 1028 n. 1 (2001)(quoting *American Mining Cong.*, 772 F.2d at 626, and listing possible justifications as: (1) the agency action is not adequately explained and cannot be reviewed properly without considering the cited materials; (2) the record is deficient because the agency ignored relevant fac-

---

**12.** For a critique of the overly expansive view of Stark and Wald, *see* Gordon G. Young, *Judicial Review of Informal Agency Action on the Fiftieth Anniversary of the APA: The Al-* *leged Demise and Actual Status of* Overton Park's *Requirement of Judicial Review "On the Record,"* 10 Admin. L.J. Am. U. 179 (1996).

tors it should have considered in making its decision; (3) the agency considered factors that were left out of the formal record; (4) the case is so complex and the record so unclear that the reviewing court needs more evidence to enable it to understand the issues; and (5) evidence coming into existence after the agency acted demonstrates the actions were right or wrong), it listed only two exceptions in *Lee v. U.S. Air Force*, 354 F.3d 1229, 1242 (2004)(citing *American Mining Cong.*, 772 F.2d at 626, and noting that supplementation was appropriate "where the agency ignored relevant factors it should have considered or considered factors left out of the formal record").[13] Though these decisions are not necessarily incongruous, the failure to articulate consistently and comprehensively the exceptions contributes to confusion on the part of litigants and the district judges who are often uncertain how many exceptions exist and what exactly the exceptions are.[14] *See, e.g., S. Utah Wilderness Alliance v. Thompson*, 811 F.Supp. 635, 643, n. 4 (D.Utah 1993)("The court should not consider material outside the record unless it falls into one of three exceptions: (1) if the material explains technical information in the record; (2) if the agency failed to

consider relevant evidence; or (3) if the agency, in bad faith, failed to include information in the record. If there are gaps in the record, the court should remand for further consideration") (citations omitted).

It is not my province to articulate the standard governing the admission of extra-record evidence throughout this circuit. I note this confusion, however, in hoping that the 10th Circuit will grasp the nettle and provide a clear articulation of the exceptions allowing district courts in this circuit to supplement the Administrative Record with extra-record evidence. Having noted this confusion, and entered my plea for clarity, I now turn to the exception most relevant to this case—an agency's failure to consider relevant evidence.

■■■ A court's review under "Section 706(2)(A) [of the APA] requires a finding that the actual choice made was not 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.' 5 U.S.C. § 706(2)(A). To make this finding the court must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Overton Park*, 401 U.S. at 416, 91 S.Ct. 814. The

---

**13.** Such confusion is not exclusive to the 10th Circuit. *Compare Esch*, 876 F.2d at 991 (Exceptions include, "(1) when agency action is not adequately explained in the record before the court; (2) when the agency failed to consider factors which are relevant to its final decision; (3) when an agency considered evidence which it failed to include in the record; (4) when a case is so complex that a court needs more evidence to enable it to understand the issues clearly; (5) in cases where evidence arising after the agency action shows whether the decision was correct or not; (6) in cases where agencies are sued for a failure to take action; (7) in cases arising under the National Environmental Policy Act; and (8) in cases where relief is at issue, especially at the preliminary injunction stage") *with IMS v. Alvarez*, 129 F.3d 618, 624 (D.C.Cir.1997)(seeming to find that excep-

tions exist only upon a showing that (1) the agency failed to examine all relevant factors; (2) the agency failed to explain adequately its grounds for decision; or (3) the agency acted in bad faith or engaged in improper behavior in reaching its decision).

**14.** Further confusing matters, both of these opinions include an exception where an agency considers factors which it left out of the Administrative Record. Such evidence, however, should be considered "completing the record." As such, in order to reduce the likelihood of confusion, it should not be listed under the exceptions under which parties may "supplement the record." For more discussion of the problems related to confusion between the terminology and standards relating to the admission of these two different forms of evidence, *see supra* n. 7.

APA does not require an agency to have made the best decision, but it does require the agency to have made a rational and justified one. The agency must have examined the relevant data and articulated a rational connection between the facts found and the decision made, supported by substantial evidence in the record. *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Ins. Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983); *Olenhouse v. Commodity Credit Corp.*, 42 F.3d 1560, 1575–76 (10th Cir.1994). Where an agency fails to consider evidence relevant to the final decision, its rationale and justification may be undermined. By its very nature, evidence which the agency fails to consider is frequently not in the record. Accordingly, in order to allow for meaningful, in-depth, probing review, such extra-record evidence is often properly included in the Administrative Record.

■ In deciding to de-list the Preble's in Wyoming, the U.S. Fish and Wildlife Service found that the "Preble's populations in Wyoming are more widespread and threats to the subspecies less severe than those known at the time of listing." 73 Fed.Reg. 39790. As one of the BiOps cited by Petitioners states, however:

> Habitat loss and fragmentation resulting from human land uses have adversely impacted Preble's populations, and continue to do so. Preble's populations in Colorado *and Wyoming* are threatened by ongoing and increasing urban, industrial, agricultural, ranching and recreational development; ongoing and increasing wetland/riparian habitat destruction and/or modification, small size of known populations; and inadequacy or lack of government protection for the species and its habitats.

Fish and Wildlife Service, Programmatic Biological Opinion for the Wyoming Bureau of Land Management's Rawlins Resource Management Plan, Doc. 32–3, 22 (emphasis added). As Respondents argue, and Petitioners have failed to rebut, the relevant decision makers did not possess or consider, directly or indirectly, either this or any of the other consultation documents that Petitioners seek to add to the record in the context of promulgating the Final Rule. As noted above, however, it is appropriate to allow supplementation of an Administrative Record "where necessary . . . for determining whether the agency considered all relevant factors including evidence contrary to the agency's position." *Franklin Savings Ass'n v. Office of Thrift Supervision*, 934 F.2d 1127, 1137 (10th Cir.1991). Accordingly, Petitioners argue that these documents must be admitted because they "relate to the position of the agency's own experts on the question central to this case. To deny their relevance would be inconsistent with rational decisionmaking by an administrative agency." *Kent County, Delaware Levy Court v. Envt'l Prot. Agency*, 963 F.2d 391, 396 (D.C.Cir.1992).

Though I do not speculate as to the Respondents' motives in failing to consider these documents, it is apparent that they are relevant to the decision to de-list the Preble's in Wyoming. The BAs and BiOps contain detailed information and analysis relating to the Preble's.[15] As in *Kent County*, these documents were created by the agency's own experts and are relevant to the decision challenged in this case. Nevertheless, Respondents argue that, unlike the agency in *Kent County*, they *intentionally* decided not to consider the substance of the consultation documents to which Petitioners refer.[16] Accordingly, al-

---

**15.** *See supra* note 9.

**16.** Respondents allege that they only specifically considered two BiOps; accordingly, they

have included those BiOps in the Administrative Record. They only considered the re-

lege Respondents, their decision is entitled to deference, and the Administrative Record should not be supplemented with these documents.

I am not convinced by Respondents' attempt to distinguish between negligent and deliberate exclusion of records. As a threshold matter, it is contrary to subsequent decisions which explicitly hold that *Kent County* applies where "the agency *deliberately or negligently* excluded documents that may have been adverse to its decision." *James Madison Ltd. v. Ludwig*, 82 F.3d 1085, 1095 (D.C.Cir.1996)(emphasis added); *see also American Radio Relay League, Inc. v. Fed. Commcn's Comm'n*, 524 F.3d 227, 244 (D.C.Cir.2008) (Tatel, J. concurring) ("In *Kent County* we ordered the agency to supplement the administrative record *even though* there was no indication 'that the agency had purposefully excluded the documents' ")(emphasis added). Furthermore, if, as Respondents suggest, an agency could exclude documents and materials from the administrative record by intentionally deciding not to review them, the agency could significantly skew the record in its favor. This is inconsistent with the meaningful judicial review required by *Overton Park*.

▉ The BAs and BiOps relating to the various formal and informal consultations between various government agencies and the U.S. Fish and Wildlife Service concerning impacts of various projects in Wyoming on the Preble's are relevant to the decision to de-list the Preble's in Wyoming. As Respondents should have but failed to consider these relevant documents, they are properly admitted into the Administrative Record.

▉ When the Administrative Record is inadequate, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or ex-

planation." *Sierra Club–Black Hills Group v. U.S. Forest Serv.*, 259 F.3d 1281, 1289 (10th Cir.2001) (quoting *Fla. Power & Light Co.*, 470 U.S. at 744, 105 S.Ct. 1598). In a case such as this one, however, where Petitioners seek to supplement the record with a limited class of documents which should have been considered by the Respondents in reaching the challenged decision, I think it appropriate to compel supplementation of the record with those documents. Accordingly, Respondents shall include in the record the BAs and BiOps associated with formal and informal consultations between various government agencies and the U.S. Fish and Wildlife Service concerning impacts of various projects in Wyoming on the Preble's.

### CONCLUSION

In conducting review of agency action under § 706 of the APA, a reviewing court may not substitute its judgment for that of the agency. Where an agency decision is not "arbitrary, capricious, or otherwise not in accordance with the law," it is entitled to deference. In some cases, however, a party challenging an agency action may overcome the presumption of regularity upon a showing that the agency has, in some manner, abused its discretion. This framework applies to all agency actions—including the agency's designation of the Administrative Record which forms the basis for judicial review.

Petitioners have met their burden in demonstrating that Respondents have failed to designate the Administrative Record for the Solicitor's Memorandum Opinion. The agency shall, consistent with this decision, compile the appropriate Administrative Record consisting of the documents and materials "directly and indirectly considered" by the relevant decision makers in the formulation of the Memorandum.

maining documents in very summary, non-    substantive form, however.

Petitioners have also adequately established that Respondents should have but failed to consider the BAs and BiOps relating to the various formal and informal consultations between various government agencies and the U.S. Fish and Wildlife Service concerning impacts of various projects in Wyoming on the Preble's. Accordingly, the Administrative Record will be supplemented with these BAs and BiOps.