# United States Tax Court

160 T.C. No. 14

JEREMY BERENBLATT,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket No. 7208-17W.                               Filed May 24, 2023.

————

P was one of over 100 people interviewed by the IRS as part of an investigation that ultimately led to large recoveries from various institutional and individual taxpayers. His interview took place in November 2007. During that interview, P explained to two special agents and one revenue agent of the IRS his conclusion that a particular transaction, involving digital foreign exchange options, was fraudulent because it lacked economic substance.

P did not have any further contact with the IRS about the investigation until the summer of 2015, more than seven years later, when he submitted Form 211, Application for Award for Original Information, to the IRS WBO alleging that the information he had provided in his interview was instrumental to the IRS's eventual recoveries. (P alleged that the IRS began propounding the economic substance theory—and thus began winning lawsuits—only after P's interview.) The WBO issued a determination letter denying P's claim for award. The denial was based on representations from the primary IRS special agent who interviewed P that the IRS had already known the relevant information before P's interview.

P invoked this Court's jurisdiction under I.R.C. § 7623(b)(4) to review the WBO's determination. In the course of discovery, P filed Motions to Compel R to produce various documents and respond to various interrogatories covering periods both before and after P's interview with the IRS.

*Held*: R's designation of the administrative record in a whistleblower case enjoys a presumption of correctness absent clear evidence to the contrary. Discovery aimed at completing the designated record shall be allowed only upon a significant showing that there is material in the IRS's possession indicative of bad faith on the IRS's part or of an incomplete record.

*Held, further*, P has not made any significant showing of bad faith or an incomplete record in connection with his requests for document production. He has made a limited showing of an incomplete record with respect to one of his interrogatory requests. We will therefore compel R to supplement his interrogatory response in that regard, but we will deny the remaining components of P's Motions to Compel.

_____

*Martin E. Karlinsky*, for petitioner.

*Elizabeth C. Mourges, Bartholomew Cirenza*, and *Nancy M. Gilmore*, for respondent.

OPINION

COPELAND, *Judge*: Petitioner, Jeremy Berenblatt, has brought an action against the Commissioner (Respondent) of the Internal Revenue Service (IRS) under section 7623(b)(4)[1] to appeal a denial by

_____

[1] Unless otherwise indicated, all statutory references are to the Internal Revenue Code, Title 26 U.S.C. (I.R.C.), in effect at all relevant times, all regulation references are to the Code of Federal Regulations, Title 26 (Treas. Reg.), in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.

the IRS's Whistleblower Office (WBO) of his application for a whistleblower award. Before the Court are three pending motions: (1) Petitioner's Motion to Compel Production of Documents, (2) Petitioner's Motion to Compel Responses to Interrogatories, and (3) Respondent's Motion for Summary Judgment. (We hereafter refer to Petitioner's two Motions together as the Motions to Compel.) We previously granted Petitioner's Motion to Stay Proceedings to address these discovery disputes. Therefore, we will address only the Motions to Compel at this time.

*Background*

The following facts are taken from the parties' pleadings and supporting documents. They are stated solely for the purpose of disposing of Mr. Berenblatt's Motions to Compel and not as findings of fact.

On July 1, 2015, the WBO received from Mr. Berenblatt Form 211, Application for Award for Original Information, dated June 25, 2015. The substantive information in the Form 211 was contained in an attached memorandum. Mr. Berenblatt sent the WBO a followup memorandum in support of his Form 211, dated December 8, 2015. We refer to the June 25 memorandum and the December 8 memorandum collectively as the Form 211 memoranda.

I. *Form 211 Memoranda*

The Form 211 memoranda set forth the facts alleged in this paragraph and the paragraphs that follow. Mr. Berenblatt worked as a stock trader in the late 1990s, with an expertise in foreign currency exchange. He earned a significant amount of income during the year 2000, after which he was approached about investing in a digital foreign exchange option transaction known as Short Options Strategies (SOS). SOS was billed as an opportunity for legally minimizing taxes. A digital option is a type of option where the payoff is either a fixed amount or nothing at all, depending on whether the underlying asset passes a stated strike price.

Mr. Berenblatt completed an SOS investor application and funded a trading account. However, he ultimately determined that the probability of the options' yielding a nonzero payoff was negligible, such that the transaction lacked a nontax business purpose and was potentially fraudulent. In the words of the June 25 memorandum: "[Mr. Berenblatt] concluded that it would be impossible to ever make money,

as the lottery payout [i.e., the nonzero option payoff] would never materialize. . . . The only conceivable benefit from the deal was the extraordinary tax benefit that had nothing to do with any plausible return on the investment." Mr. Berenblatt did not move forward with the investment.

In late 2007 a special agent (SA) in the IRS's Criminal Investigation Division (CID) called Mr. Berenblatt to request a meeting. The agent mentioned that the U.S. Government would soon convene a grand jury investigation into some of the SOS promoters. In or around November 2007 Mr. Berenblatt met with Shawn Chandler, another CID SA, at Mr. Chandler's New York office. A third CID SA, Christine Mazzella, and IRS Revenue Agent (RA) Arthur Mason also participated in the meeting. During the meeting, Mr. Berenblatt related his analysis of the SOS transaction to the agents. He explained that the probability distribution for payoffs on the digital options was skewed by the fact that the intermediary bank "controlled the trade and its pricing."

Mr. Berenblatt claims that he was the first person to provide the IRS with a successful litigation tactic for proving the fraudulence of the SOS transaction. He claims that before his interview, the IRS's primary litigating position was that the SOS transactions fell afoul of the "step transaction" doctrine—an argument that had failed in court. According to Mr. Berenblatt, after his interview the IRS began winning cases relating to SOS and similar tax shelters by using the reasoning he had provided to the IRS first.

Mr. Berenblatt seeks an award related to the U.S. Government's recovery of at least $1.4 billion in restitution, forfeiture, and settlement proceeds and at least $5.9 billion in unpaid taxes stemming from digital options and similar shelters.

II.     *WBO Review*

In September 2015 the WBO assigned Senior Tax Analyst Laura Meis to review Mr. Berenblatt's whistleblower award application. After reviewing the Form 211 and the June 25 memorandum, Ms. Meis contacted Mr. Chandler, the primary CID SA who had interviewed Mr. Berenblatt in November 2007. Ms. Meis corresponded by email and phone with Mr. Chandler, who related that (1) "[Mr. Berenblatt's] claim as being the first person to provide pertinent and relevant information is not accurate"; (2) Mr. Berenblatt "had not provided any documents for the [SOS] investigation and . . . he was not called to testify [in any

related trials]"; and (3) the SOS investigation had been ongoing for two years before Mr. Berenblatt's interview.

Mr. Chandler soon thereafter submitted to the WBO a Form 11369, Confidential Evaluation Report on Claim for Award. Mr. Chandler checked the "No" box next to the following pertinent questions in item 11:

A. Did the Service use the information the whistleblower provided to develop specific document requests or other inquiries to the [allegedly noncompliant] taxpayer?

B. Did the Service use the information provided by the whistleblower to validate the completeness and accuracy of the taxpayer's response to information requests?

C. Did the whistleblower provide additional information that would not have been obtained through general audit or investigative techniques?

. . . .

G. Did the whistleblower provide technical or legal analysis of the taxpayer's records or transactions that would not otherwise have been done by the Service?

Mr. Chandler also included the following narrative with that Form 11369:

The investigation of the [target] taxpayers was well under way by the time the Whistleblower met with, and provided information to, Internal Revenue Service–Criminal Investigation in or around November 2007. (See attached articles: one regarding the law firm of [Taxpayer F],[2] former employer of . . . [Taxpayer P] and [Taxpayer U], ordered to pay a $76 million fine to the IRS in March 2007 and the other article dated May 18, 2006, regarding [Taxpayer H's] involvement relative to the tax shelter transactions discussed by the Whistleblower.) The

---

[2] Identifying information about the subjects of Mr. Berenblatt's whistleblower claims is being redacted in accordance with Rule 345(b) and this Court's protective order of August 7, 2017. The pseudonyms for the target taxpayers are taken from the reference list of redacted information submitted by Mr. Berenblatt.

whistleblower was one of hundreds of individuals identified as having had contact with the taxpayer(s) relative to the tax shelter transactions at issue in the investigation. The whistleblower did not provide any new information relative to the investigation. The whistleblower was not considered a viable potential witness in the investigation and did not testify during the two criminal trials in this matter. In addition, over 100 individuals had been interviewed in the investigation at the point in time the Whistleblower met with Internal Revenue Service–Criminal Investigation in or around November 2007 and a vast number of financial and tax related subpoenaed records had been analyzed as well.

As indicated in the narrative, Mr. Chandler attached to the Form 11369 several print articles from major news sources. These articles reported the following pertinent information: (1) a law firm identified by Mr. Berenblatt avoided prosecution in March 2007 by admitting that it developed and marketed tax shelters and paying a $76 million penalty to the IRS and (2) a bank identified by Mr. Berenblatt was the subject of a federal investigation into digital options tax shelters as early as May 2006. None of the articles discussed specific legal theories or litigation strategies regarding the alleged tax shelters.

Sometime after her communication with Mr. Chandler, Ms. Meis prepared a memorandum for the WBO recommending a preliminary full denial of Mr. Berenblatt's award application. In support of this recommendation, Ms. Meis exclusively cited the claims, information, and news articles relayed to her by Mr. Chandler. The WBO sent a preliminary denial letter to Mr. Berenblatt dated January 4, 2017. Ms. Meis then prepared a memorandum recommending a final full denial of Mr. Berenblatt's application. This memorandum contained substantially the same supporting information as Ms. Meis's earlier memorandum. The WBO adopted Ms. Meis's recommendation and sent Mr. Berenblatt a final denial letter, dated March 2, 2017, explaining that "the IRS identified the issue(s) prior to receipt of your information and your information did not substantially contribute to the actions taken by the IRS." Mr. Berenblatt timely submitted his Petition to this Court on March 30, 2017, invoking our jurisdiction under section 7623(b)(4) to consider appeals of whistleblower award determinations by the IRS.

III.    *Discovery Disputes*

On May 14, 2019, Respondent filed with this Court the documents that the IRS contends constitute the entire IRS administrative record of Mr. Berenblatt's whistleblower claim. Mr. Berenblatt believes that the produced record is inadequate, and he attempted to obtain further documents and responses from Respondent through informal discovery. After Respondent rejected many of those requests, Mr. Berenblatt filed the Motions to Compel asking us to require Respondent to produce the following documents and to respond (or supplement his previous responses) to the following interrogatories:[3]

> *Request No. 2(a)*: All Documents [created or modified between March 24, 2007, and March 24, 2008] containing the objectives, strategies, and progress of the SOS Shelter Investigation—such as, for example, when the IRS or [U.S. Department of Justice (DOJ)] first identified [Taxpayer H] and [Taxpayer T] as targets of the investigation, including but not limited to Forms 6085, also known as the "30-Day Workplan," or its equivalent, prepared as part of routine management and supervision of the SOS Shelter Investigation.

> *Request No. 12*: With respect to each witness retained as an expert in an SOS Product litigation, provide a copy of each written report prepared by such witness, and all related communications and/or correspondence (including emails) between IRS/DOJ personnel and such expert witnesses.

> *Request No. 23*: Documents concerning the "over 100 individuals [that] had been interviewed in the investigation at the point in time the Whistleblower met with the Internal Revenue Service" referenced by Shawn Chandler.

---

[3] The identifying numbers for the requests correspond to Mr. Berenblatt's original—and lengthier—requests for documents and responses. We denied without prejudice his motions to compel Respondent to take action on those earlier requests, as those motions failed to specify the particular documents or interrogatories whose production or response he sought to compel.

*Request No. 24*: Documents comprising the "financial and tax related subpoenaed records" referenced by Shawn Chandler.

*Interrogatory No. 1(c)*: Describe SA Chandler's role in the SOS Shelter Investigation and position on the SOS Shelter Investigation team including his role in interviews of potential witnesses and other individuals in connection with the SOS Shelter Investigation, including the selection of individuals, the preparation for interviews, and the materials saved from or prepared after interviews.

*Interrogatory No. 3(e)*: Identify all Documents concerning the Berenblatt Interview, including the preparation for, scripts for, scheduling of, notes from, participation in, and follow-up from that interview—including but not limited to notes from [Revenue] Agent Arthur Mason who was present and taking notes at the interview.

*Interrogatory No. 5*: Identify the "over 100" individuals referred to in the Form 11369.

*Interrogatory No. 6*: Identify the "financial and tax related subpoenaed records" referred to in the Form 11369.

*Interrogatory No. 9*: Identify all individuals who provided information to SA Chandler and the SOS Shelter Investigation from September 24, 2006, to September 24, 2008, concerning Taxpayer H's and Taxpayer T's involvement in the SOS Shelter, including information concerning the lack of business purpose and/or economic substance of the SOS Shelter and information concerning Taxpayer H's role with respect to the design, management, and execution of such investments, as well as all Documents that refer, relate to, or contain such information.

*Interrogatory No. 10(a)*: Describe how SA Chandler and SA Christine Mazzella searched for Documents related to Berenblatt and his Petition following commencement of this action, including but not limited to any searches of computer hard drives, network drives, and emails for records stored electronically, including specific search terms used.

*Interrogatory No. 10(b)*: Describe how SA Chandler and SA Christine Mazzella searched for Documents related to Berenblatt and his Petition following commencement of this action, including but not limited to any searches of physical records in secure IRS storage facilities or anywhere else the records are held, including how many boxes or files were examined.

*Interrogatory No. 10(d)*: Describe how SA Chandler and SA Christine Mazzella searched for Documents related to Berenblatt and his Petition following commencement of this action, including but not limited to how SA Chandler and SA Mazzella determined whether a Document was responsive or unresponsive.

Respondent objected to the Motions to Compel on four primary grounds: (1) some of the requests seek tax return information whose disclosure is prohibited by section 6103; (2) some of the requests seek secret grand jury information whose disclosure is prohibited by Rule 6(e) of the Federal Rules of Criminal Procedure; (3) some of the requests seek documents protected by the exception for attorney work product and/or the deliberative process privilege for government agencies; and (4) all of the requested documents are outside of the administrative record concerning Mr. Berenblatt's award claim and therefore are not relevant to this litigation.

*Discussion*

I.    *Overview*

To date, this Court has not explicitly addressed the proper standards for evaluating discovery requests in the specific context of whistleblower appeals under section 7623. Thus, Mr. Berenblatt's Motions to Compel present questions of first impression. We first review the relevant content of section 7623, assure ourselves of jurisdiction in this case, and review the proper scope and standard of review for whistleblower cases. We then announce our standard for discovery requests in section 7623 cases (following relevant precedent from the

U.S. Court of Appeals for the District of Columbia Circuit)[4] and apply that standard to Mr. Berenblatt's Motions to Compel.

II.    *Section 7623 Background*

Section 7623 provides for awards to individuals who provide the IRS with information regarding third parties found to have underpaid their taxes or otherwise violated the internal revenue laws. (Such action is colloquially known as "blowing the whistle," and thus these individuals are commonly referred to as "whistleblowers.")    *See Whistleblower 972-17W v. Commissioner*, No. 972-17W, 159 T.C., slip op. at 4 (July 13, 2022).  Section 7623(a) authorizes discretionary awards, and section 7623(b) mandates awards in certain cases.  For example, mandatory awards are available only when the proceeds in dispute exceed $2 million.   I.R.C. § 7623(b)(5); *see also Van Bemmelen v. Commissioner*, 155 T.C. 64, 71 (2020).  The mandatory award provisions are at issue in this case, so we look more closely at section 7623(b)(1) and (2), which provides in relevant part as follows:

> (1) In general.—If the Secretary proceeds with any administrative or judicial action [against a taxpayer who has underpaid any tax or who has violated, or conspired to violate, the tax laws] based on information brought to the Secretary's attention by an individual, such individual shall . . . receive as an award at least 15 percent but not more than 30 percent of the proceeds collected as a result of the action (including any related actions) or from any settlement in response to such action . . . .    The determination of the amount of such reward by the Whistleblower Office shall depend upon the extent to which the individual substantially contributed to such action.
> (2) Award in case of less substantial contribution.
>> (A) In general.—In the event the action described in paragraph (1) is one which the Whistleblower Office determines to be based principally on disclosures of specific allegations (other than information provided by the individual described in paragraph (1)) resulting from a judicial

_____

[4] In deciding whistleblower cases, we generally follow the precedent of the D.C. Circuit, to which an appeal of our decision in such cases would lie (absent a contrary stipulation by the parties).    *See* I.R.C. § 7482(b) (flush language); *Golsen v. Commissioner*, 54 T.C. 742, 757 (1970), *aff'd*, 445 F.2d 985 (10th Cir. 1971).

or administrative hearing, from a government report, hearing, audit, or *investigation*, or from the news media, the Whistleblower Office may award such sums as it considers appropriate, but in no case more than 10 percent of the proceeds collected as a result of the action (including any related actions) or from any settlement in response to such action (determined without regard to whether such proceeds are available to the Secretary), taking into account *the significance of the individual's information and the role of such individual* and any legal representative of such individual *in contributing to such action*.

(Emphasis added.)

Thus, there are two prerequisites governing an award under section 7623(b): The IRS must (1) proceed with an administrative or judicial action based on the whistleblower's information (action requirement) and (2) collect proceeds as a result of the action (collection requirement). *See* Treas. Reg. § 301.7623-1(a) ("The awards provided for by section 7623 and this paragraph must be paid from collected proceeds . . . .").[5]

Treasury Regulation § 301.7623-2(b)(1) clarifies the action requirement of section 7623(b)(1):

[T]he IRS *proceeds based on* information provided by a whistleblower when the information provided substantially contributes to an action against a person

---

[5] The effective-date provision for Treasury Regulation §§ 301.7623-1, -2, and -3 reads as follows: "This rule is effective on August 12, 2014. This rule applies to information submitted on or after August 12, 2014, and to claims for award under sections 7623(a) and 7623(b) that are open as of August 12, 2014." Treas. Reg. §§ 301.7623-1(f), -2(f), and -3(f). Mr. Berenblatt initially provided information to the IRS in 2007, but he did not file his claim for award until 2015. The first sentence of the effective-date provision, standing alone, entails at a minimum that all claims submitted on or after August 12, 2014 (like Mr. Berenblatt's) are subject to the regulations. The second sentence appears to then expand the class of claims to which the first sentence would otherwise apply, rather than narrowing it. Mr. Berenblatt submitted all the relevant information pertaining to his claim on July 1, 2015 (i.e., after August 12, 2014) when he filed his Form 211, notwithstanding that he had submitted substantially the same information during his 2007 interview. Therefore, we hold that these regulations apply to this case.

identified by the whistleblower. For example, the IRS proceeds based on the information provided when the IRS initiates a new action, expands the scope of an ongoing action, or continues to pursue an ongoing action, that the IRS would not have initiated, expanded the scope of, or continued to pursue, but for the information provided.

Treasury Regulation § 301.7623-2(d)(1) clarifies the collection requirement of section 7623(b)(1):

[T]he terms *proceeds of amounts collected* and *collected proceeds* (collectively, *collected proceeds*) include: Tax, penalties, interest, additions to tax, and additional amounts collected because of the information provided [by the whistleblower] . . . .

Section 7623(b)(4) further provides that an award determination by the WBO under section 7623(b) may be appealed to this Court.

III.   *Jurisdiction*

A.   *General Principles*

Like all federal courts, we are a court of limited jurisdiction. *Whistleblower 21276-13W v. Commissioner*, 155 T.C. 21, 26 (2020). We exercise jurisdiction only over matters that Congress expressly authorizes us to consider. *Id.*; *see also* I.R.C. § 7442. Of course, we always have jurisdiction to determine whether we have jurisdiction. *Whistleblower 21276-13W*, 155 T.C. at 26. And we must assure ourselves of our jurisdiction even when not asked to by the parties. *Id.*

The relevant jurisdictional provision in a whistleblower case is section 7623(b)(4). It provides that "[a]ny determination regarding an award under [section 7623(b)](1), (2), or (3) may . . . be appealed to the Tax Court (and the Tax Court shall have jurisdiction with respect to such matter)." Determinations under those provisions generally are made by the WBO, which reviews whistleblower claims to determine whether an award will be paid and, if so, decides the amount of the award. *See, e.g.*, I.R.C. § 7623(b)(1), (2)(A), (3).

B.   *Tax Court Jurisdiction*

In *Li v. Commissioner*, 22 F.4th 1014, 1017 (D.C. Cir. 2022), the D.C. Circuit clarified that we do not have jurisdiction over an appeal of

a "threshold rejection" of a whistleblower award claim where the IRS does not proceed with any relevant administrative or judicial action against the target taxpayers. In so holding, the D.C. Circuit observed that "an award determination by the IRS arises only when the IRS '*proceeds* with any administrative or judicial action described in subsection (a) based on information brought to the Secretary's attention by [the whistleblower].'" *Id.* (quoting I.R.C. § 7623(b)(1)) (alteration in original). After *Li*, in *Whistleblower 972-17W*, 159 T.C., slip op. at 7–10, we held that if the IRS proceeded with an action against target taxpayers identified by the whistleblower's information and collected proceeds from the target taxpayers, our Court has jurisdiction over the appeal notwithstanding the WBO's contention that the collection was not based on the issues identified by the whistleblower.

We now likewise hold that we have jurisdiction over cases, like this one, where the IRS proceeded with an administrative or judicial action against the target taxpayers and, at some point after the whistleblower provided information, collected proceeds in connection with the issue or issues raised by the whistleblower. Our rationale is essentially the same as in *Whistleblower 972-17W*: If the question of whether the IRS prevailed in the various SOS shelter collection actions "based on" Mr. Berenblatt's information were jurisdictional, then we could not determine whether we have jurisdiction until deciding virtually the entire case on its merits. Moreover, it would be unclear what scope and standard of review to apply in making that jurisdictional determination. *See id.* at 9–10. Here, with an "action" commenced and "collection" of proceeds, we conclude that we have jurisdiction to review Mr. Berenblatt's appeal of the denial of his claim for an award.

IV.    *Standard and Scope of Review in Whistleblower Cases*

In reviewing an award determination of the WBO, we employ the standard of review of section 706(2)(A) of the Administrative Procedure Act, which generally tells a reviewing court to reverse agency action that it finds "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Kasper v. Commissioner*, 150 T.C. 8, 21 (2018).

Our scope of review of WBO determinations is generally confined to the administrative record (the so-called record rule). *Id.* at 20; *cf. James Madison Ltd. by Hecht v. Ludwig*, 82 F.3d 1085, 1095 (D.C. Cir. 1996). "Ordinarily the record is comprised of those documents that were before the administrative decisionmaker," including "all the information it considered directly or indirectly." *Cape Hatteras Access Pres. All. v.*

*U.S. Dep't of Interior*, 667 F. Supp. 2d 111, 114 (D.D.C. 2009) (first citing *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971); and then citing *Amfac Resorts, L.L.C. v. U.S. Dep't of Interior*, 143 F. Supp. 2d 7, 12 (D.D.C. 2001)). As articulated by the D.C. Circuit, a court generally should have before it neither more nor less information than the agency (here, the WBO) had when it made its determination. *Hill Dermaceuticals, Inc. v. FDA*, 709 F.3d 44, 47 (D.C. Cir. 2013).

Because our standard of review for WBO award determinations is abuse of discretion and our scope of review is limited to the administrative record, we must be cautious in granting motions to compel discovery.

V.      *Discovery in Whistleblower Cases*

In general, the propriety of a discovery request hinges on the underlying substantive dispute and how this Court may resolve that dispute. *See* Rule 70. In particular, Rule 70(b)(1) provides, in relevant part: "Discovery may concern any matter not privileged that is relevant to the subject matter involved in the pending case."

However, in the context of record-rule cases, the D.C. Circuit has held that "[d]iscovery typically is not available," given the presumption that the agency has properly designated the record. *Air Transp. Ass'n of Am. v. Nat'l Mediation Bd.*, 663 F.3d 476, 487 (D.C. Cir. 2011) (citing *Air Transp. Ass'n of Am.*, No. 10-0804, 2010 U.S. Dist. LEXIS 144089, at *5 (D.D.C. June 4, 2010)). According to that court, there are two narrow exceptions to this general rule: "[I]f a party makes a significant showing—variously described as a strong, substantial, or prima facie showing—that it will find material in the agency's possession indicative of bad faith or an incomplete record, it should be granted limited discovery." *Id.* at 487–88 (citing *Air Transp. Ass'n of Am.*, 2010 U.S. Dist. LEXIS 144089, at *5). In its reference to the applicable standard ("variously described as strong, substantial, or prima facie"), the D.C. Circuit summarized several strands of previous caselaw. *Cf. Air Transp. Ass'n of Am.*, 2010 U.S. Dist. LEXIS 144089, at *5 (collecting cases).

Therefore, whistleblowers may be granted limited discovery if they make a significant showing that there is material in the IRS's possession indicative of bad faith on the IRS's part in connection with the case or of an incomplete administrative record compiled by the IRS. In evaluating the adequacy of the whistleblower's showing, we will bear in mind that (as noted by the U.S. District Court for the District of

Columbia) "a party must provide good reason to believe that discovery will uncover evidence relevant to the Court's decision to look beyond the [designated] record." *Amfac Resorts, L.L.C.,* 143 F. Supp. 2d at 12. Condoning discovery beyond these conditions would belie this Court's limited scope of review in whistleblower cases. In this case, Mr. Berenblatt has not alleged bad faith; therefore, we focus on whether the record was incomplete and briefly address the rules for completing the designated record.

## VI. *Discovery Aimed at Completing the Administrative Record*

In *Air Transport Association of America*, the D.C. Circuit countenanced discovery aimed at remedying an "incomplete record." Since the D.C. Circuit did not explicitly define that phrase in *Air Transport Association of America* (or subsequently), we now look to other applicable law and precedents.

### A. *Treasury Regulation § 301.7623-3(e)*

Treasury Regulation § 301.7623-3(e) provides a general statement regarding a whistleblower's administrative record and a list of materials that the IRS has determined will always be included in that record, namely:

> Treas. Reg. § 301.7623-3(e) Administrative record. (1) In general. The administrative record comprises all information contained in the administrative claim file that is relevant to the award determination and not protected by one or more common law or statutory privileges.
>
> (2) Administrative claim file. The administrative claim file will include the following materials relating to the action(s) to which the determination relates—
>
> (i) The Form 211, "Application for Award for Original Information," filed by the whistleblower and all information provided by the whistleblower (whether provided with the whistleblower's original submission or through a subsequent contact with the IRS).
>
> (ii) Copies of all debriefing notes and recorded interviews held with the whistleblower (and the whistleblower's legal representative, if any).

(iii) Form(s) 11369, "Confidential Evaluation Report on Claim for Award," including narratives prepared by the relevant IRS office(s), explaining the whistleblower's contributions to the actions and documenting the actions taken by the IRS in the case(s). The Form 11369 will refer to and incorporate additional documents relating to the issues raised by the claim, as appropriate, including, for example, relevant portions of revenue agent reports, copies of agreements entered into with the taxpayer(s), tax returns, and activity records.

(iv) Copies of all contracts entered into among the IRS, the whistleblower, and the whistleblower's legal representative (if any), and an explanation of the cooperation provided by the whistleblower (or the whistleblower's legal representative, if any) under the contract.

(v) Any information that reflects actions by the whistleblower that may have had a negative impact on the IRS's ability to examine the taxpayer(s).

(vi) All correspondence and documents sent by the Whistleblower Office to the whistleblower.

(vii) All notes, memoranda, and other documents made by officers and employees of the Whistleblower Office and considered by the official making the award determination.

(viii) All correspondence and documents received by the Whistleblower Office from the whistleblower (and the whistleblower's legal representative, if any) in the course of the whistleblower administrative proceeding.

(ix) All other information considered by the official making the award determination.

For purposes of evaluating whether a whistleblower has made a significant showing that there is material in the IRS's possession indicative of an incomplete record, we will deem all materials listed in

Treasury Regulation § 301.7623-3(e) to be necessary parts of the complete record.

### B.    *Materials Directly or Indirectly Considered*

In *Van Bemmelen*, 155 T.C. at 74 (quoting *Cape Hatteras Access*, 667 F. Supp. 2d at 114), we explained that a complete administrative record must contain "all the information [the WBO] considered directly or indirectly" in reaching its decision. Accordingly, we may allow limited discovery if a whistleblower makes a significant showing that the IRS has failed to include materials that the WBO considered, directly or indirectly, in reaching its decision. However, in evaluating the strength of the whistleblower's showing, we will be mindful that "[a]bsent a substantial showing made with clear evidence to the contrary, an agency is presumed to have properly designated the administrative record." *Id.* at 74. Indeed, for a Court to order completion of the designated record, "the [petitioner] must overcome this strong presumption of regularity by putting forth concrete evidence that the documents it seeks to 'add' to the record were actually before the decisionmakers." *Id.* at 74–75 (quoting *Cape Hatteras Access*, 667 F. Supp. 2d at 114).[6]

### C.    *Extra-Record Evidence*

In *Van Bemmelen*, we explained that in exceptional circumstances we may supplement the designated record with evidence that the WBO neither directly nor indirectly considered (i.e., "extra-record" evidence). The D.C. Circuit has "recognized a small class of cases where district courts [or, as here, our Court] may consult extra-record evidence when 'the procedural validity of the [agency]'s action . . . remains in serious question.'" *Hill Dermaceuticals, Inc.*, 709 F.3d at 47 (second and third alterations in original) (quoting *Esch v. Yeutter*, 876 F.2d 976, 991 (D.C. Cir. 1989)). Specifically, the D.C. Circuit has

---

[6] For clarity, we emphasize the distinction between a motion to compel discovery and a motion to complete or supplement the record. The former motion seeks to obtain material relevant to the case that was not included in the administrative record. If a petitioner discovers such material, he or she may then proceed with the latter motion and move the court to either "complete" the administrative record with material that should have been included in the designated record but was excluded by the agency or "supplement" the administrative record with material that was not initially before the agency but that the petitioner believes should nonetheless be considered in conjunction with the administrative record (i.e., extra-judicial or extra-record evidence). Our standards for evaluating motions to complete and supplement the record are set out in *Van Bemmelen*, 155 T.C. at 73–78.

identified three standards under which extra-record evidence may be consulted:

> (1) if the agency "deliberately or negligently excluded documents [from consideration] that may have been adverse to its decision," (2) if background information was needed "to determine whether the agency considered all the relevant factors," or (3) if the "agency failed to explain administrative action so as to frustrate judicial review."

*City of Dania Beach v. FAA*, 628 F.3d 581, 590 (D.C. Cir. 2010) (quoting *Am. Wildlands v. Kempthorne*, 530 F.3d 991, 1002 (D.C. Cir. 2008)); *see also James Madison Ltd. by Hecht*, 82 F.3d at 1095.

Importantly, *City of Dania Beach* discussed only supplementing the administrative record and not "discovery." Here, we note that our disposition of Mr. Berenblatt's Motions to Compel is not dependent on *City of Dania Beach*'s three standards. Therefore, we leave for consideration in a future case whether discovery is appropriate to uncover extra-record evidence.

D.     *Summary of Discovery Rules*

On the basis of the foregoing, we hold that whistleblower discovery requests are appropriate upon a significant showing that (1) there is material in the IRS's possession indicative of bad faith on the IRS's part in connection with the case or (2) there is material in the IRS's possession indicating that the designated record omits material the WBO actually considered (directly or indirectly) or that otherwise falls under a category listed in Treasury Regulation § 301.7623-3(e).

VII.     *Analysis of Mr. Berenblatt's Motions to Compel*

Mr. Berenblatt's discovery issues are thorny given the length of time the SOS tax shelter investigation had been ongoing before his involvement and the substantial records compiled by IRS CID before his interview. Importantly, while we have allowed whistleblowers to add material to the designated administrative record at times, we have not allowed them to conduct fishing expeditions during discovery. With this background in mind, we evaluate Mr. Berenblatt's individual discovery requests.

Mr. Berenblatt has not supported his Motions to Compel with any evidence of bad faith on the IRS's part, and he has specifically

disclaimed any such allegation. He does contend that the record produced by the IRS excludes certain documents related (in some way) to his claim for award, namely, the interview documents and subpoenaed records referred to in Mr. Chandler's Form 11369 narrative, expert reports from the SOS litigation, and additional notes and memos related to his interview with IRS CID.

Therefore, Mr. Berenblatt's contentions center on his insistence that the administrative record produced by the IRS is incomplete. Respondent vehemently disagrees and, in connection with this litigation, provided a 765-page administrative record, accompanied by a declaration of Ms. Meis attesting to its completeness and accuracy. Respondent contends that Mr. Berenblatt's requests are outside the scope of discovery and that he "did not contribute any information that . . . respondent used in any way in [his] investigations of the subjects of petitioner's whistleblower claim." Thus, we are left to sort through whether Mr. Berenblatt has made a significant showing of an incomplete record.

A.      *Compelling Additional Document Production*

1.      *Mr. Berenblatt's Contention of an Incomplete Record*

Mr. Berenblatt's document request Nos. 23 and 24 ask for any documents relating to the "over 100 individuals [who] had been interviewed in the [SOS] investigation" before the IRS's interview with Mr. Berenblatt, along with the "financial and tax related subpoenaed records" referenced by Mr. Chandler in his Form 11369 narrative. Mr. Berenblatt argues that the complete administrative record would include all such documents because SA Chandler was the decision maker for purposes of the record rule, insofar as he completed the Form 11369 on which Ms. Meis relied. Thus, he contends that the administrative record must include all documents available to SA Chandler at the time he completed the Form 11369 because they were considered at least indirectly in reaching a decision on Mr. Berenblatt's claim.

These contentions fail. First of all, Ms. Meis and her colleagues in the WBO were the decision makers for Mr. Berenblatt's award claim, not Mr. Chandler. Moreover, Mr. Berenblatt has failed to show that the WBO *indirectly* considered the interview documents and subpoenaed records. Mr. Chandler's Form 11369 narrative contains no description whatsoever of the contents of the interview documents or subpoenaed

records (nor does the narrative clearly imply what those contents are). Regardless, Respondent has taken the position that Mr. Berenblatt did not contribute to the investigation because the IRS investigation was already well underway at the time of Mr. Berenblatt's interview. Respondent is in effect arguing that there was not a substantial contribution (nor any contribution) under section 7623(b)(2).

Mr. Berenblatt counters that any relevant documents available to the WBO when it ruled on his claim are discoverable whether or not the WBO reviewed them. Mr. Berenblatt cites one of our previous opinions for the proposition that "the administrative record [in a collection due process case] includes not only material that the settlement officer reviewed but also material that was *available* for his review." *Emery Celli Cuti Brinckerhoff & Abady, P.C. v. Commissioner*, T.C. Memo. 2018-55, at \*21 (holding that an IRS settlement officer abused his discretion in failing to consider information submitted by the taxpayer after the due date for submissions but before issuance of the notice of determination). However, the documents at issue in *Emery* had been sent by the taxpayer directly to the settlement officer whose decision we were reviewing for abuse of discretion. Likewise, in the two similar cases we cited in *Emery—Thompson v. U.S. Department of Labor*, 885 F.2d 551, 553–56 (9th Cir. 1989), and *West v. Commissioner*, T.C. Memo. 2010-250, slip op. at 11 n.11—the litigating parties sent relevant documents to the agency decision makers or otherwise brought those documents to their attention.

We therefore find *Emery* inapposite here.[7] If *any* potentially available document in the IRS's possession at the time the WBO made its decision were discoverable, that would render the record rule all but meaningless. Here, there is no evidence or contention that Mr. Berenblatt submitted the interview documents or subpoenaed records to the WBO. Discovery of items available to Mr. Chandler or the WBO is limited to those relevant to Mr. Berenblatt's contribution to the ongoing investigation and generally does not extend to those created before his interview.

As clarified in Treasury Regulation § 301.7623-3(e)(2)(iii), the administrative record includes any Form 11369 prepared with respect to the whistleblower's case (e.g., the Form prepared by Mr. Chandler,

---

[7] This Court has noted before that "[w]histleblower cases are just different [from collection due process cases such as *Emery*]"—in part because whistleblowers do not come before us in their capacity as taxpayers. *Kasper*, 150 T.C. at 20.

which has already been included in the administrative record). The regulation further notes that "[t]he Form 11369 will refer to and incorporate additional documents relating to the issues raised by the claim, as appropriate." This regulation does not explicitly include all such "additional documents" in the record. Even assuming that the documents "incorporate[d]" into the Form 11369 are per se part of the record, for the reasons stated above Mr. Chandler cannot be said to have incorporated the interview records and subpoenaed documents into his Form 11369.[8] There is no good evidence (let alone a significant showing) that any of the documents at issue in request Nos. 23 and 24 are part of the complete administrative record. We therefore reject Mr. Berenblatt's argument that his administrative record is incomplete because it did not include the interview documents and subpoenaed records obtained before his interview.

### 2. *Mr. Berenblatt's Contention of Negligence*

Mr. Berenblatt suggests that even if the WBO neither directly nor indirectly considered the interview documents and subpoenaed records, it should have reviewed them and was negligent in failing to do so. If this is true, Mr. Berenblatt might qualify for discovery by virtue of showing that extra-record evidence can be consulted pursuant to the first *City of Dania Beach* standard (viz, if the WBO deliberately or negligently excluded from consideration documents that may have been adverse to its decision).[9]

However, Mr. Berenblatt's own submissions to the WBO—in particular, the December 8 memorandum—belie his theory of negligence. In that memorandum Mr. Berenblatt cites *Stobie Creek Investments, LLC v. United States*, 82 Fed. Cl. 636 (2008) (No. 05-748), *aff'd*, 608 F.3d 1366 (Fed. Cir. 2010), apparently the first case in which the Government prevailed against an SOS shelter. Mr. Berenblatt contends that the Government's expert witness, David F. DeRosa, "echoed" the nontax business purpose (lack of economic substance) argument that Mr. Berenblatt had conveyed to the IRS agents during

---

[8] Meanwhile, we cannot accept (and the regulation does not indicate) that just *any* external document that a Form 11369 "refer[s] to"—however glancingly—is per se part of the record.

[9] We reiterate that we are not here deciding whether extra-judicial or extra-record evidence is discoverable in whistleblower cases. Therefore, we entertain Mr. Berenblatt's allegation of negligence only to show that it does not affect our disposition of his Motions to Compel.

his November 2007 interview. However, we take judicial notice that Dr. DeRosa's Expert Report submitted in that case is dated September 14, 2007—before Mr. Berenblatt's interview.[10] *See* United States' Response to Plaintiffs' Motion in Limine to Exclude Reports and Testimony of Dr. David F. DeRosa, Exhibit 1, *Stobie Creek Invs., LLC.* Dr. DeRosa's report opines on an SOS shelter transaction and includes the following relevant statements (supported by ample fact-specific analysis):

> I concluded that the Participants' digital options had the "appearance" of a sweet spot, but that the sweet spot could never materialize because [the intermediary bank] would prevent the sweet spot from being hit.

*Id.* at 25.

> Given the inability to satisfy any of the business purposes addressed above, I conclude that the Participants created no meaningful advantage by contributing the offsetting options to Stobie Creek Investments, LLC, and that therefore Stobie Creek Investments, LLC had no business purpose in the context of these transactions.

*Id.* at 93.

Given that Mr. Berenblatt referenced Dr. DeRosa's testimony in his December 8 memorandum to the WBO and, further, that Dr. DeRosa's expert report indicates the Government had already developed the nontax business purpose argument before Mr. Berenblatt's interview, we conclude that the WBO was not negligent in failing to review the interview documents and subpoenaed records at issue (or, at worst, its failure was harmless error). The existence of Dr. DeRosa's report strongly suggests that such a review would have been superfluous.[11]

---

[10] The report was filed in the Court of Federal Claims on March 19, 2008, but is dated September 14, 2007.

[11] We emphasize that we are not here deciding that Mr. Berenblatt's Form 211 claim for award lacks merit. Rather, we determine only that the existence of Dr. DeRosa's report—and its label of September 14, 2007—defeats any significant showing of WBO negligence in failing to exhaustively review interview documents and subpoenaed records collected in connection with the SOS litigation.

### 3. *Remaining Document Requests*

Mr. Berenblatt's remaining document requests—Nos. 2(a) and 12—are for documents "containing the objectives, strategies, and progress of the SOS Shelter Investigation" and for expert witness reports prepared for the IRS during SOS litigation. Mr. Berenblatt does not contend that the WBO directly or indirectly considered any of these documents, nor are we aware of any evidence to that effect. Nor do any of these records fall under one of the categories listed in Treasury Regulation § 301.7623-3(e). Moreover, we find these requests to be overly broad and unduly burdensome because they seek workplans and routine work investigation documents regardless of whether those records relate to information that Mr. Berenblatt provided to the IRS or fall within the timeframe of Mr. Berenblatt's disclosures. Accordingly, these discovery requests amount to a fishing expedition. We also agree with Respondent that much of the information requested (in particular, most or all of the expert witness reports) is publicly available and thus obtainable from another source. *See* Rule 70(c). Therefore, we cannot uphold any of Mr. Berenblatt's four document requests.[12]

### B. *Compelling Additional Answers to Interrogatories*

Most of Mr. Berenblatt's interrogatory response requests seek to compel responses that Respondent has already provided or identification of documents that Respondent asserts do not exist. Our discovery rules do not allow duplicative requests, and we cannot compel discovery of nonexistent information. Rule 70(c). Neither will we compel Respondent to prove a negative. As with the document requests, we will not sanction a fishing expedition nor compel responses related to information outside the designated administrative record without a significant showing of bad faith or an incomplete record. With that background, we find that one of Respondent's partial responses to Mr. Berenblatt's interrogatory response requests was sufficiently terse or indirect as to call into question whether the WBO improperly failed to include information in its possession that might be a proper part of Mr. Berenblatt's administrative record.

---

[12] In supplemental filings with this Court, Mr. Berenblatt has proposed seeking discovery of certain documents that the IRS identified as being in the possession of the District Court for the Southern District of New York, which oversaw the grand jury investigation of the SOS shelter promoters. Mr. Berenblatt cannot proceed with this third-party discovery unless and until it becomes clear that some or all of these documents are discoverable in his case under the standards set out here.

Interrogatory No. 3(e) asks Respondent to identify all documents pertaining to Mr. Berenblatt's November 2007 interview with the two CID SAs and RA Mason, or more specifically to "[i]dentify all Documents concerning the Berenblatt interview . . . including but not limited to notes from [Revenue] Agent Arthur Mason who was present and taking notes at the interview."

The *Internal Revenue Manual* (IRM) instructs that handwritten notes are to be kept in the investigative file; however, it does not require agents to take notes during an interview. IRM 9.4.5.9.3 (Feb. 1, 2005). It also allows agents to use their discretion on whether to prepare a Memorandum of Interview: "A memorandum of interview is an informal note or document containing information that the person desires to memorialize." IRM 9.4.5.7.4(1) (May 15, 2008).

Respondent has replied to interrogatory No. 3(e) stating that he already disclosed the documents related to Mr. Berenblatt's interview. However, Respondent leaves unclear whether RA Mason took notes, stating that "Special Agent Chandler does not *believe* RA Arthur Mason took notes at the interview." (Emphasis added.) By contrast, Mr. Berenblatt has conveyed his recollection that RA Mason took notes throughout the interview. We have no reason to doubt the sincerity or accuracy of Mr. Berenblatt's memory. And because Treasury Regulation § 301.7623-3(e)(2)(ii) refers to "[c]opies of all debriefing notes and recorded interviews held with the whistleblower," any notes that RA Mason took at the interview are part of the complete record. Therefore, we will compel Respondent to clarify whether RA Mason took notes during Mr. Berenblatt's interview and, if so, whether such notes still exist, were lost, or were destroyed.

The remaining interrogatory response requests either were adequately addressed or seek information from before Mr. Berenblatt's involvement with the SOS shelter investigation or beyond the scope of inquiry in a whistleblower claim. For example, in interrogatory No. 10(a) Mr. Berenblatt asks Respondent to describe how the special agents searched for information pertinent to his administrative record. It is Mr. Berenblatt's burden in the first instance to make a significant showing that the administrative record is incomplete, not Respondent's obligation to defend how the administrative record was compiled.

VIII.  *Overall Observations Regarding the Motions to Compel*

Because all of Mr. Berenblatt's document requests and most of his interrogatory response requests are unsupported by a significant showing of bad faith or an incomplete record, we will deny his Motions to Compel except as to interrogatory response request No. 3(e), as noted above.  Generally, we will allow only limited discovery targeted to Mr. Berenblatt's contact with the IRS and not the entirety of the SOS investigation before his involvement.

IX.  *Conclusion*

Mr. Berenblatt asks this Court to compel discovery seeking information and documents that the WBO never considered.  Most of Mr. Berenblatt's discovery requests in his Motions to Compel clearly go well beyond the administrative record.  He has not tried to show bad faith in Respondent's designation of the administrative record or handling of his claim, and we see no such evidence.  Moreover, Respondent adequately answered most of Mr. Berenblatt's interrogatory response requests, with the one exception noted above.  Respondent's remaining objections (concerning section 6103, Rule 6(e) of the Federal Rules of Criminal Procedure, the exception for attorney work product, and the deliberative process privilege) do not apply to the specific interrogatory response we are compelling.

To implement the foregoing,

*An appropriate order will be issued.*